IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

J.T. SHANNON LUMBER          )
COMPANY, INC.,               )
                             )
        Plaintiff,           )
                             )
vs.                          )      No. 2:07-cv-2847-JPM-cgc
                             )
RICHARD BARRETT,             )
                             )
        Defendant.           )
_____

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

_____

Before the Court is Plaintiff J.T. Shannon Lumber Company's Motion for Summary Judgment (Docket Entry ("D.E.") 189), filed February 19, 2010, and Defendant Richard Barrett's Motion for Summary Judgment (D.E. 195), filed March 12, 2010. Defendant filed a response in opposition to Plaintiff's motion on March 22, 2010 (D.E. 216), and Plaintiff filed a response in opposition to Defendant's motion on April 14, 2010 (D.E. 227). Both Plaintiff and Defendant filed replies in support of their motions on April 8, 2010 and April 20, 2010 respectively. (D.E. 224 & 237.) The Court held a telephonic hearing on the motions on April 20, 2010. (See D.E. 238.) For the following reasons, Plaintiff's Motion for Summary Judgment is DENIED and

Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## I.   __Background__

Plaintiff J.T. Shannon Lumber Company ("Plaintiff" or "J.T. Shannon") is in the business of selling hardwood lumber products.  (Am. Compl. (D.E. 27) ¶ 6.)  In June 2001, J.T. Shannon hired Defendant Richard Barrett ("Defendant") as its "Territory Manager of the Midwest Region."  (Def.'s Mot. for Summ. J. at 3 ¶ 5.)  As part of his employment with J.T. Shannon, Defendant entered into a "Confidentiality Agreement" on June 19, 2001 followed by a separate "Employment Agreement" on July 27, 2001.  (See Pl.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. Ex. B ("June 19, 2001 Confidentiality Agreement")[1] (D.E. 190-3); Pl.'s Statement of Undisputed Facts in

---

[1]     The Confidentiality Agreement provides:

> The nature and services provided by The Shannon Lumber Group requires that information be handled in a private, confidential manner.
>
> Information about our business or our employees or clients will not be released to people or agencies outside the company without our written consent; the only exceptions to this policy will be to follow legal or regulatory guidelines.  All memoranda, notes, reports, or other documents will remain part of the company's confidential records.
>
> Personal or identifying information about our employees (such as names, addresses, phone numbers or salaries) will not be released to people not authorized by the nature of their duties to receive such information, without the consent of management and the employee.

(June 19, 2001 Confidentiality Agreement).

Supp. of Mot. for Summ. J. Ex. A ("Barrett Employment

Agreement") (D.E. 190-2).)   The Employment Agreement contains

three provisions relevant to the instant case: a

"Confidentiality" provision,[2] a "Non-Competition" provision[3] and

---

[2]     The Confidentiality provision in the Employment Agreement provides:

The Employee hereby acknowledges that he holds a fiduciary
relationship, capacity, and duty with respect to his
employment with the Company and, accordingly, he covenants
and agrees that he will not, at any time, either during the
period he is employed by the Company or thereafter reveal,
communicate or in any way divulge, to any person, firm,
corporation or other entity any information, knowledge or
data of whatsoever kind or nature which he acquired or was
made available to him during his employment by the Company,
including but not limited to any information which relates
to the Company's or its Affiliated Companies' operations,
suppliers, personnel, customer names, financial
information, financings, revenues, expenses, acquisitions,
management agreements, or other documents of a confidential
nature relating to the ownership or operation of the
Company or any of its Affiliated Companies or concerning
any officers, directors, employees or agents of the Company
or any Affiliated Companies.  The Employee will not, except
for the Company, use, copy, duplicate or transcribe any
Company documents or objects or remove them from the
Company's main office or facilities nor [sic] use any
information concerning them except for the Company's sole
benefit either during his employment or thereafter.  The
Employee further agrees that he will deliver all of the
aforementioned documents and objects that may be in his
possession to the Company upon the termination of this
Agreement and the Employee's employment hereunder or at any
time upon the Company's request, together with his written
certification and affidavit of compliance with respect to
delivery of all such documents and other related
information.  The Employee's obligations and agreements set
forth in this Paragraph shall survive any termination, for
whatsoever reason, of this Agreement and of the Employee's
employment hereunder.

(Barrett Employment Agreement ¶ 7.2.)

[3]     The Non-Competition provision in the Employee Agreement provides:

The Employee agrees that during the period that he is
employed by the Company and for a period of one (1) year
thereafter he will not own, be a partner in, operate, be
employed by, act as an advisor, consultant, agent or
independent contractor for, or otherwise have an interest

a "Non-Solicitation" provision[4].   (<u>Id.</u> ¶¶ 7.2, 7.3, & 7.4.)

Defendant held the position of Territory Manager of the Midwest

---

in, either directly or indirectly, any company which competes directly or indirectly with the Company anywhere within the United States of America, or such area as a court in enforcing this Paragraph shall determine is reasonable under the circumstances, without the written consent of the Company.   Employee acknowledges and agrees that the foregoing restriction is reasonable in view of the nature of the Company's business and the scope of his employment.   The parties recognize that irreparable injury will result to the Company in the event of a breach or threat of breach by the Employee of any of the provisions of this Paragraph, the Company shall be entitled, in addition to other remedies and damages available, to an injunction to restrain the violations thereof by the Employee and all persons acting for and/or with him.   The Employee's obligations and agreements set forth in the Paragraph shall survive any termination, for whatsoever reason, of this Agreement and the Employment's employment hereunder.

(Barrett Employment Agreement ¶ 7.3.)

[4]    The Non-Solicitation provision in the Employee Agreement provides:

The Employee agrees that during the period he is employed by the Company and for a period of two (2) years thereafter, he will not, either alone or in concert with others, solicit, entice, induce or encourage: (1) any employee(s) to leave the employment of the Company or any of its Affiliated Companies; or (2) any customer(s) to discontinue using the Company's services or the services of any Affiliated Companies; or (3) any supplier from discontinuing supplying inventory to the Company or its Affiliated Companies.   The parties recognize that irreparable injury will result to the Company in the event of a breach of this Non-Solicitation Paragraph on the part of the Employee and agree that in the event of a breach or threat of a breach by the Employee of any of the provisions in this Paragraph, the Company shall be entitled, in addition to the other remedies and damages available, to an injunction to restrain the violations thereof by the Employee and all persons acting for and/or with him.   The Employee's obligations and agreements set forth in this Paragraph shall survive any termination, for whatsoever reason, of this Agreement and the Employee's employment hereunder.

(Barrett Employment Agreement ¶ 7.4.)

Region until he was promoted to Vice President of Sales on January 1, 2002. (Def.'s Mot. for Summ. J. at 3 ¶ 5.)

In late 2002, Defendant and Jack Shannon, owner and Chief Executive Officer of J.T. Shannon, made the decision to expand J.T. Shannon's business operations into the Asian lumber market. (Pl.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. (D.E. 190-1) ¶ 2.) As part of the expansion, J.T. Shannon opened an office in Shanghai, China and hired Jianliang "Gary" Xu, a Chinese national, who had experience trading North American timber to Chinese companies. (Id. ¶ 5.) Xu was hired to "start[] [J.T. Shannon's] Asian business from scratch" and reported directly to Defendant. (Id.) Like Defendant, Xu entered into an employment agreement with J.T. Shannon that contained confidentiality and non-competition provisions. (Id. ¶ 6; see also id. Ex. E ("Xu Employment Agreement") (D.E. 190-6).)

According to Plaintiff, business out of the Shanghai office was so successful that its supply could not meet demand. (Pl.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. ¶¶ 7-8.) Defendant contacted Scott England of Gilco Lumber, Inc. ("Gilco"), a company that was also in the business of marketing and selling hardwood lumber. (Id. ¶ 8.) As a result of the discussions between Defendant and England, J.T. Shannon and Gilco entered into an arrangement whereby J.T. Shannon would

purchase lumber from Gilco, take title to it, and resell it to J.T. Shannon's customers in the Asian markets. (Id.; see also Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mot. Mem.") (D.E. 190) at 4 n.3.)

In 2005, Defendant and England discussed the possibility of J.T. Shannon and Gilco forming a joint venture which would expand each company's presence in the Asian lumber market. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mot. Mem.") (D.E. 196) at 9 ¶ 54.) As part of these discussions, England traveled to China and toured the Samson/Lacquercraft furniture manufacturing plant, J.T. Shannon's largest Chinese customer, with Defendant and Gary Xu. (Pl.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. ¶ 10.) James Harless, Chairman of Gilco, also traveled to China and toured the same plant with Gary Xu. (Def.'s Resp. to Pl.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. (D.E. 216-3) ¶ 11.) According to Defendant, he attended a meeting in West Virginia with England and Harless to continue discussions regarding the joint venture. (Id. at 11 ¶¶ 66-68.) Despite these discussions, Jack Shannon informed Gilco in late 2005 that J.T. Shannon was unwilling to go forward with the joint venture. (Id. at 11-12 ¶ 68.) Shortly thereafter, Defendant resigned as

J.T. Shannon's Vice President of Sales.[5]  (See Pl.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. Ex. H ("Barrett Resignation Letter") (D.E. 190-9).)

After Defendant resigned from J.T. Shannon, Gilco began selling directly to Samson/Lacquercraft.  (Def.'s Mot. Mem. at 14 ¶ 84.)  England also attempted to hire Gary Xu, J.T. Shannon's Asian sales representative, to work for Gilco.  (Id. at 14 ¶ 87.)  Gary Xu declined Gilco's offer of employment but recommended his wife, Claire Chen.  (Id. at 15 ¶ 89.)  In March 2006, Gilco hired Claire Chen to be Gilco's Asian sales representative.  (Id.)

On a routine visit to J.T. Shannon's office in Shanghai, Frank Owens, Defendant's successor, discovered Gilco documents on a J.T. Shannon computer.  (Pl.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. ¶ 20.)  Gary Xu attempted to prevent Owens from examining the information.  (Id.)  Gary Xu later admitted that he deleted several files, including Gilco's customer order information, from the J.T. Shannon computer. (Id. ¶ 21.)  The deleted files were reconstructed by J.T. Shannon and form the basis of J.T. Shannon's lawsuit against

---

[5]     Defendant's resignation letter provides, in pertinent part, "[e]ffective February 10th I hereby tender my resignation as Vice President of Sales for J.T. Shannon Lumber Company."  (See Barrett Resignation Letter.) Defendant, however, maintains that his employment with Plaintiff terminated February 7, 2006.  (Def.'s Resp. to Pl.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. ¶ 13.)

Gilco currently pending in the United States District Court for the Northern District of Mississippi ("Mississippi Case").[6]  See J.T. Shannon Lumber Co. v. Gilco Lumber Co., No. 2:07CV119-SA-SAA, 2010 WL 234996, at *2 (N.D. Miss. Jan. 15, 2010).

During discovery in the Mississippi Case, a search of Gilco's computers revealed a six-page document emailed from Defendant to Scott England on February 9, 2006 ("China-Gilco Document").  See J.T. Shannon Lumber, 2010 WL 234996, at *2. The document contains detailed steps to be taken by Gilco to set up a sales office in China.  (Pl.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. ¶ 12; id. Ex. G ("China-Gilco Document") (D.E. 190-8).)  The document also contains a cover page sent from Darrell Sheets to Gary White, both Gilco employees, which contains the following language:

> Gary this is part of the proposal to employ Gary
> [sic] xu to become our exclusive agent in the
> Asian market some parts of this document will in not
> apply to how we manage our operations, and I am
> sure a consultation fee will be involved for Rick
> Barrett.

(China-Gilco Document at 1.)

On May 1, 2008, Plaintiff filed an amended complaint alleging the following causes of action against Defendant

---

[6]    Plaintiff's claims against Defendant Barrett originated in the Mississippi Case.  (See D.E. 1-2.)  Plaintiff's claims against Defendant Barrett were severed and transferred to this Court pursuant to a forum selection clause in Defendant's Employment Agreement.  (See Order Severing and Transferring Action and Claims (D.E. 1 at 2); J.T. Shannon, 2010 WL 234996, at *2 n.1.)

Barrett: (1) misappropriation of trade secrets in violation of the Tennessee Uniform Trade Secrets Act, (2) breach of contract, (3) breach of fiduciary duty of loyalty, (4) conversion, (5) tortious interference with contract, (6) civil conspiracy, (7) unfair competition, (8) disparagement, and (9) fraud. (<u>See generally</u> Am. Compl.)  Plaintiff moves the Court for summary judgment as to its misappropriation of trade secrets claim, breach of contract claim, and breach of fiduciary duty of loyalty claim.  (Pl.'s Mot. Mem. at 13, 17 & 19.)  Defendant moves the Court for summary judgment as to all of Plaintiff's claims.  (Def.'s Mot. for Summ. J. at 7.)

## II.  <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," <u>Celotex</u>, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate.  <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 353 (6th Cir. 1989).  In considering a motion for

summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

## III. **Analysis**

The Court will first consider both Plaintiff's and Defendant's motions as to Plaintiff's misappropriation of trade secrets claim, breach of contract claim, and breach of fiduciary duty of loyalty claim. The Court will then consider Defendant's motion as to Plaintiff's claims of conversion, tortious

10

interference with contract, civil conspiracy, unfair competition, disparagement, and fraud.

**A.   Misappropriation of Trade Secrets**

In 2000, the Tennessee Legislature enacted the Tennessee Uniform Trade Secrets Act ("TUTSA").  Hamilton-Ryker Group, LLC v. Keymon, No. W2008-00936-COA-R3-CV, 2010 WL 323057, at *14 (Tenn. Ct. App. Jan. 28, 2010) (citing Tenn. Code Ann. §§ 47-25-1701-1709).  TUTSA creates a cause of action for the misappropriation of another's trade secrets.  See id.  Under TUTSA, a plaintiff who successfully establishes that a defendant misappropriated a trade secret is entitled to injunctive relief and/or an award of damages.  Id. (citing Tenn. Code Ann. §§ 47-25-1703, 1704).  Plaintiff contends that the China-Gilco Document constitutes a J.T. Shannon trade secret and by emailing the China-Gilco Document to Scott England, Defendant misappropriated J.T. Shannon's trade secret.

**1.   Existence of a trade secret**

TUTSA lists three requirements for information to be considered a trade secret: (1) the information must derive independent economic value from not being generally known, (2) others could obtain economic value from its disclosure or use, and (3) efforts have been made to maintain its secrecy.  Tenn.

Code Ann. § 47-25-1702(4).[7]  The parties dispute whether the China-Gilco Document constitutes a trade secret.

Defendant argues that the China-Gilco Document does not constitute a trade secret for two reasons.  First, Defendant argues that he acquired the information contained within the China-Gilco Document from his experiences as an editor of international hardwood lumber market newsletters, as opposed to his experiences as J.T. Shannon's Vice President of Sales. (Def.'s Mem. in Supp. of Resp. to Pl.'s Mot. for Summ. J. ("Def.'s Resp. Mem.") (216-1) at 4.)  Second, Defendant argues that the information contained in the China-Gilco Document was not confidential or proprietary information but rather was information that was commonly known in the hardwood lumber industry.  (Id. at 3.)

Conversely, Plaintiff insists that the information contained in the China-Gilco Document was not only confidential and proprietary but also that it was acquired by Defendant as a

---

[7]     The term "trade secret" is statutorily defined as:

[I]nformation, without regard to form, including, but not limited to, technical, non-technical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan that:
   (A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
   (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Tenn. Code Ann. § 47-25-1702(4).

direct result of his experience as J.T. Shannon's Vice President of Sales, particularly through his role in setting up Plaintiff's Shanghai office. (Pl.'s Mot. Mem. at 14.) Alternatively, Plaintiff claims that even if the information contained in the China-Gilco Document was available in the public domain, that the combination of that information into a unitary whole is protected. (<u>Id.</u> at 15-16 (<u>citing</u> <u>Hamilton-Ryker Group</u>, 2010 WL 323057, at *15 ("Even if [the defendant] could have obtained 'individual pieces of information' by other means, the integration and aggregation of it may be deemed confidential or a trade secret."); <u>Wright Med. Tech., Inc. v. Grisoni</u>, 135 S.W.3d 561, 589 (Tenn. Ct. App. 2001) ("[E]ven if portions of the information used are in the public domain, the integration of the information into a process not commonly known may be protectable.").)

The Court finds that both parties have proffered sufficient evidence to prevent the other party from prevailing as a matter of law with regard to the classification of the China-Gilco Document as a trade secret. An issue of material fact therefore exists as to the first element of Plaintiff's misappropriation of trade secrets claim.[8]

---

[8]     The district court in the Mississippi Case found that the China-Gilco Document constitutes a trade secret under the Mississippi Uniform Trade Secrets Act ("MUTSA"). <u>See</u> <u>J.T. Shannon Lumber</u>, 2010 WL 234996, at *2. Although the Court finds the analysis in the Mississippi Case persuasive, the Court is not convinced, based on the record before the Court, that either

## 2. Misappropriation[9]

The relevant portion of TUTSA's definition of misappropriation requires disclosure or use of a trade secret while knowing or having reason to know that the trade secret was acquired under a duty to maintain its secrecy or limit its use. Tenn. Code Ann. § 47-25-1702(2)(B)(ii)(b). It is undisputed that Defendant emailed the China-Gilco Document to Scott England on February 9, 2006. It is also undisputed that during Defendant's employment with Plaintiff, Defendant was under a duty to refrain from releasing or disclosing certain information relating to J.T. Shannon's business operations, as evinced by the Confidentiality provision in Defendant's Employment Agreement. Defendant argues, however, that the language of the

_____

party is entitled to summary judgment with regard to the existence of a trade secret element of Plaintiff's TUTSA claim.

[9] The term "misappropriation" is statutorily defined as:

(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:
    (i) Used improper means to acquire knowledge of the trade secret; or
    (ii) At the time of disclosure or use, knew or had reason to know that that person's knowledge of the trade secret was:
        (a) Derived from or through a person who had utilized improper means to acquire it;
        (b) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
        (c) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
    (iii) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake[.]

Tenn. Code Ann. § 47-25-1702(2).

Confidentiality provision did not prevent him from disclosing the China-Gilco Document.  Consequently, even if the China-Gilco Document constitutes a trade secret, the information contained therein was not "[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use" and thus was not misappropriated.

The Court finds that these facts show that there is a factual dispute with regard to the misappropriation element of Plaintiff's TUTSA claim.  Because the parties have set forth specific facts showing that there is a genuine issue for trial with regard to the elements of trade secret misappropriation, both Plaintiff's and Defendant's motions for summary judgment are DENIED.

**B.   Breach of Contract**

The second count in Plaintiff's amended complaint alleges that Defendant is liable for breach of contract.  Specifically, Plaintiff alleges that Defendant breached the Confidentiality Agreement and the Employment Agreement.

**1.   Confidentiality Agreement**

Defendant argues that the Employment Agreement entered into July of 2001 superseded the Confidentiality Agreement entered into June of 2001.  The Court agrees.  The Employment Agreement contains an "integration clause" which provides: "This Agreement supersedes any and all prior understanding(s), agreement(s),

representation(s), and other communication(s) between the parties concerning the subject matter hereof." (Barrett Employment Agreement ¶ 10.1.) The Employment Agreement also contains a Confidentiality provision, (see id. ¶ 7.2), which concerns the same subject matter covered by the Confidentiality Agreement. The Confidentiality Agreement is therefore superseded by the Employment Agreement and Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's breach of contract claim based on the Confidentiality Agreement.

## 2. Employment Agreement

Defendant's Employment Agreement contains three provisions relevant to Plaintiff's breach of contract claim: a Confidentiality provision, a Non-Solicitation provision, and a Non-Competition provision. Plaintiff contends that (1) Defendant breached the Confidentiality provision when he emailed the China-Gilco Document to Scott England, (2) Defendant breached the Non-Competition provision by "acting as an advisor and consultant to Gilco," and (3) Defendant breached the Non-Solicitation provision by encouraging Gilco to hire Gary Xu and by encouraging Gilco to sell to Plaintiff's Chinese customers directly. (Pl.'s Mot. Mem. at 18-19.)

Defendant argues, however, that the Employment Agreement is unenforceable because (1) it became inoperative on January 1, 2002 when he was promoted to Vice President of Sales, and (2)

16

the restrictive covenants contained therein are unreasonable. (Def.'s Resp. Mem. at 6, 8-9.)  Alternatively, Defendant argues that even if the Employment Agreement is enforceable, he nonetheless did not violate its terms.  (Id. at 7-9.)

### a.   Enforceability of the Employment Agreement

The Court must first determine whether the Employment Agreement remained enforceable after Defendant was promoted from Territory Sales Manager of the Midwest Region to Vice President of Sales.  This issue presents a question of contract interpretation.  A determination of the parties' contractual intentions is a question of law appropriate for summary judgment "because the words of the contract are definite and undisputed, and in deciding the legal effect of words, there is no genuine factual issue[] left for a jury to decide." Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002) (citations omitted).

Under Tennessee Law,[10] when resolving disputes concerning contract interpretation, "[the court's] task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." Id. at 889-90 (quoting Guiliano v. Cleo, Inc., 995 S.W.2d 88, 95 (Tenn.

---

[10]     Section 10.4 of the Employment Agreement contains the following provision: "This Agreement shall be interpreted, construed and governed in accordance with the laws of the State of Tennessee." (Barrett Employment Agreement ¶ 10.4.)

1999)).  The intent of the parties is presumed to be that specifically expressed in the body of the contract.  Id. at 890.  "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy."  Id. (quotation omitted).  If clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes.  Id.  As a result, Tennessee courts prohibit the introduction of extrinsic evidence where a contract is unambiguous on its face.  Sec. Fire Prot. Co. v. Huddleston, 138 S.W.3d 829, 836 (Tenn. Ct. App. 2003) (citation omitted).

In the instant case, the contract contains a "Term of Employment Provision" which provides:

> The Employee's employment hereunder (the "Initial Term") shall commence on June 19, 2001, and shall continue through June 30, 2002.  After the initial term, Employee's employment shall continue from year to year thereafter upon the same terms and conditions unless:
>     (a) Either party elects not to renew the Employee's employment hereunder by giving written notice to the other party at least ninety (90) days prior to the expiration of the Initial Term (or at least sixty (60) days prior to the expiration of any renewal term);
>     (b) Employment is terminated in accordance with Section VIII or Section IX of this Agreement; or

    (c) Employment is renegotiated in writing by
        and between the parties within a reasonable
        time prior to the expiration of the Initial
        Term (or within a reasonable time prior to
        the expiration of any renewal term).

(Barrett Employment Agreement at 2 § III.) As set out in the

above-cited language, the Employment Agreement explicitly states

that as long as Defendant was employed by Plaintiff, its terms

and conditions were to remain unless they were renegotiated in

writing. There is no language in the Employment Agreement

limiting the operation of the Confidentiality provision, the

Non-Competition provision, and the Non-Solicitation provision to

a specific job position. (See generally id.)

     The Court finds that the Employment Agreement unambiguously

indicates that that the parties intended for its terms and

conditions to remain applicable regardless of Defendant's job

title. Because neither party has submitted evidence that the

terms of Defendant's Employment Agreement were renegotiated in

writing, the Employment Agreement was enforceable during the

relevant periods at issue in this lawsuit.

     Moreover, even if the Court found the Term of Employment

provision ambiguous, the Court would nonetheless reach the same

conclusion. On June 30, 2006, Plaintiff and Defendant entered

into an "Agreement to Allow Limited Competition."[11] (See Barrett

---

[11]    After Defendant resigned from J.T. Shannon, he entered into the
Agreement to Allow Limited Competition as he wished to be employed by Midwest
Hardwood Corporation, a competitor of J.T. Shannon.

Aff. Ex. J. (D.E. 201-1).)  The Agreement to Allow Limited

Competition contains the following relevant language:

> WHEREAS, [Defendant] executed a certain
> [E]mployment [A]greement between J.T. Shannon
> Lumber Company, Inc. and Richard B. Barrett dated
> June 19, 2001 ("Non-compete") a true and correct
> copy of which is attached hereto; and
>
>      *    *    *    *    *    *    *    *
>
> WHEREAS, as the parties wish to allow [Defendant]
> to be employed by Midwest [Hardwood Corporation]
> during the terms of the Non-compete subject to
> the terms of this Agreement,
>
>      *    *    *    *    *    *    *    *
>
> 10. *The parties . . . agree that the Non-Compete*
> *shall remain in full force and effect*, except
> where the terms are changed by this Agreement.
> In the event of a breach of this Agreement, the
> parties further agree that all of the terms of
> the Non-compete shall be fully enforceable by its
> terms.

(Id. (emphasis added).)

    As evinced by the aforementioned language, Defendant

acknowledged that the Employment Agreement, referred to as the

"Non-compete," was in effect and enforceable on June 30, 2006,

approximately four years after Defendant was promoted to Vice

President of Sales.  Therefore, if the Court considered evidence

outside the four corners of the Employment Agreement, the Court

would nonetheless find that the parties intended the Employment

Agreement to remain enforceable after Defendant was promoted to

Vice President of Sales.  See Allstate Ins. Co. v. Watson, 195

S.W.3d 609, 612 (Tenn. 2006) ("[W]hen a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract.") (citations omitted).

> **b.   Enforceability of the Restrictive Covenants within the Employment Agreement**

In Tennessee, "courts have not hesitated to uphold [restrictive covenants] where the restrictions contained in the covenant are found to be reasonable." Dabora, Inc. v. Kline, 884 S.W.2d 475, 477 (Tenn. Ct. App. 1994).  There is no inflexible formula for determining reasonableness, but the Tennessee Supreme Court has indicated some factors which should be considered in making the determination.  Among these are: "the consideration supporting the agreements; the threatened danger to the employer in the absence of such an agreement; the economic hardship imposed on the employee by such a covenant; and whether or not such a covenant should be inimical to public interest." Id. (quoting Allright Auto Parks, Inc. v. Berry, 409 S.W.2d 361, 363 (Tenn. 1966) (internal quotation marks omitted)).

To enforce a restrictive covenant, the employer must be able to show the presence of special facts above and beyond ordinary competition that would give an unfair advantage to the

employee when competing with his former employer.  Id. (citing
Hasty v. Rent-A-Driver, Inc., 671 S.W.2d 471, 473 (Tenn. 1984)).
Furthermore, the restrictive covenant must not be overly broad
in its geographic scope, or in the time period during which it
applies.  Id.

In the instant case, there are two restrictive covenants at
issue: the Non-Competition provision and the Non-Solicitation
provision.

### (i)  Non-Competition Provision

Defendant first argues that extending the application of
the Non-Competition provision to the Asian lumber market would
"impose[] a broader geographical limitation . . . than what the
parties contracted."  (Def.'s Resp. Mem. at 10-11.)  Defendant's
argument, however, is without merit.  The Non-Competition
provision prohibited Defendant from competing with Plaintiff
"anywhere within the United States *or such area as a court in
enforcing this Paragraph shall determine is reasonable under the
circumstances.*"  (Barrett Employment Agreement § 7.3.)  Giving
the language in the Non-Competition provision its plain and
ordinary meaning, the Court finds that the parties' expectations
under the contract included the possibility that a court could
alter the "anywhere within the United States" limitation, either
by shrinking the territorial limitation to a specific region

22

within the United States, or by extending the territorial
limitation to an area beyond the United States.

Defendant also argues in the event the Court finds that
the language in the Non-Competition provision includes a
restraint on trade in the Asian lumber market, that to do so
would result in a covenant that is overly broad in its
geographic scope and thus unenforceable.  In Tennessee, one of
the most significant factors to be considered when determining
the reasonableness of a covenant not to compete is "whether the
territorial limitations in the covenant are reasonable."
Columbus Med. Servs. LLC v. Thomas, No. W2008-00345-COA-R3-CV,
2009 WL 2462428, at *15; see also Allright Auto Parks, 409
S.W.2d at 285-86.  "[T]he territorial limits [of a covenant not
to compete] must be no greater than necessary to protect the
[legitimate] business interest of the employer."  Id. (quoting
Murfreesboro Med. Clinic, P.A. v. Udom, 166 S.W.3d 674, 678
(Tenn. 2005)).

The geographic scope of the Non-Competition provision is,
on its face, overly broad as it purports to cover the entire
globe.  If a covenant not to compete is found to be overly
broad, "the court may determine that it is totally void, or that
it is enforceable but only to the extent of reasonable
territorial and time limitations." Dabora, 884 S.W.2d at 478
(citing, inter alia, Cent. Adjustment Bureau v. Ingram, 678

S.W.2d 28, 37 (Tenn. 1984)).  In the instant case, there is no evidence that Plaintiff acted with bad faith by inserting the Non-Competition provision into the Employment Agreement.  The Court therefore declines to find the Non-Competition provision void in its entirety.  See Cent. Adjustment Bureau, 678 S.W.2d at 37 ("If there is credible evidence to sustain a finding that a contract is deliberately unreasonable or oppressive, then the covenant is invalid.").

Having declined to find the Non-Competition provision void in its entirety, the Court's mandate is to "enforce the [Non-Competition provision] to the extent . . . reasonably necessary to protect the employer's interest without imposing undue hardship on the employee."  See id.  Under this mandate, the Non-Competition provision should be construed to cover the geographic areas where Defendant focused his attention and resources while employed by Plaintiff.  Construing the Non-Competition provision in this manner, the Court finds that that the geographic scope of the Non-Competition provision includes the Asian lumber market.  See Hamilton-Ryker, 2010 WL 323057, at *11 (noting that the reasonableness of a covenant not to compete "is not evaluated in the abstract; rather, it is determined in the context of the circumstances presented in the case before the court").

As Plaintiff's Vice President of Sales, Defendant devoted a significant amount of time developing Plaintiff's Shanghai office.  The development of the Shanghai office allowed Plaintiff to acquire a unique position in the Asian lumber industry.  Therefore, with the knowledge and information that Defendant gained of the Asian lumber market through his employment with Plaintiff, Plaintiff had a legitimate business interest that warranted protection.  The Court therefore finds that construing the geographic scope of the Non-Competition provision to include the Asian lumber market is reasonable under the instant circumstances.

Lastly, Defendant argues that the Non-Competition provision is unenforceable because Plaintiff failed to establish a legitimate and protectable interest that the covenant sought to protect.  (Def.'s Resp. Mem. at 9-10.)  As discussed above, because of the unique position Plaintiff occupied in the Asian lumber market, and the knowledge that Defendant gained of the Asian lumber market while employed by Plaintiff, the Court finds that Plaintiff has met its burden of establishing that it had a legitimate business interest that warranted protection.

### (ii) Non-Solicitation provision

The Non-Solicitation provision prevented Defendant, "during the period he was employed by the Company and for a period of two (2) years thereafter," from "solicit[ing], entic[ing],

induc[ing], or encourag[ing]: (1) any employee(s) to leave the employment of the Company or any of its Affiliated Companies; or (2) any customer(s) to discontinue using the Company's services or the services of any Affiliated Companies; or (3) any supplier from discontinuing supplying inventory to the Company or its Affiliated Companies." (Barrett Employment Agreement ¶ 7.4.) Defendant argues that because the Non-Solicitation provision lacks a geographic limitation, it is overly broad and thus unreasonable. The Court disagrees.

Tennessee Courts have held that a restriction against soliciting a specific group of people "can in effect substitute for a geographic limitation." Hamilton-Ryker, 2010 WL 323057, at *12. In other words, as long as the restrictive covenant prohibits the employee from soliciting the business of a specific and well-defined group of persons, the "omission of a territorial limitation . . . [is] not fatal." Id. (citing Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin, 765 S.W.2d 743, 745-46 (Tenn. Ct. App. 1987)). Rather than being limited by geographic boundaries, the Non-Solicitation provision only prohibited Defendant from soliciting business from a specific group of persons: Plaintiff's employees, customers, and suppliers. Under the circumstances of this case, the Court finds that the restraint on trade imposed by the Non-Solicitation provision is reasonable and thus enforceable.

### c.    Breach of the Employment Agreement

As discussed above in Part III(A), there is a genuine issue of fact as to whether Defendant misappropriated a trade secret by emailing the China-Gilco Document to Scott England.  Because Plaintiff's claim that Defendant breached the Employment Agreement is largely based on the same set of facts as its misappropriation of trade secrets claim, the question of whether Defendant breached the Employment Agreement should also be submitted to the jury.[12]  Both motions for summary judgment as to Plaintiff's claim that Defendant breached his Employment Agreement are DENIED.

### C.    Fiduciary Duty of Loyalty

As Vice President of Sales, Defendant owed a fiduciary duty of loyalty to Plaintiff.  See Efird v. Clinic of Plastic and Reconstructive Surgery, P.A., 147 S.W.3d 208, 219 (Tenn. Ct. App. 2003) ("An employee must act solely for the benefit of the employer in matters within the scope of his employment.  The employee must not engage in conduct that is adverse to the employer's interests.") (citation and internal quotation marks omitted).  Plaintiff asserts that Defendant violated the fiduciary duty of loyalty he owed to Plaintiff.  (Pl.'s Mot. Mem. at 19.)  Defendant contends, however, that he is entitled

---

[12]    TUTSA does not preempt "contractual remedies, whether or not based upon misappropriation of a trade secret."  Tenn. Code Ann. § 47-25-1708(b)(1).

to summary judgment because Plaintiff's fiduciary duty claim is preempted by TUTSA.  (Def.'s Resp. Mem. at 11.)

On its face, TUTSA "displaces conflicting tort, restitutionary, and other [Tennessee] law . . . providing civil remedies for misappropriation of a trade secret."  Tenn. Code Ann. § 47-25-1708(a).  To date, the Tennessee courts have not had the opportunity to clarify the scope of TUTSA's preemption provision.  Recognizing this gap in Tennessee jurisprudence, the United States District Court for the Eastern District of Tennessee in Hauck Manufacturing Co. v. Astec Industries, Inc. analyzed case law from courts throughout the country interpreting the preemption provision of the Uniform Trade Secrets Act ("UTSA").[13]  See Hauck Mfg. Co. v. Astec Indus., Inc., 375 F. Supp. 2d 649, 654-58 (E.D. Tenn. 2004) (collecting cases).  After conducting its case-law survey, the Hauck court concluded that Tennessee courts would likely apply the "same proof" test to the TUTSA preemption provision.  Id. at 658.

Under the "same proof" test, the court held that a non-TUTSA claim is preempted "when it necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret.'"  Id.  In other words, "if

---

[13]     Tennessee Code Annotated § 47-25-1709 provides "[t]his part shall be applied and construed to effectuate its general purpose to make consistent the law with respect to the subject of this act among states enacting it."  Thus, as noted by the court in Hauck, courts "may seek guidance in case law interpreting and applying the law of the [forty-two] other states which have adopted the UTSA."  See Hauck, 375 F. Supp. 2d at 654.

proof of a non-[T]UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it." Id. (citation omitted).

As a preliminary matter, the Court agrees with the Eastern District of Tennessee that if confronted with the issue of TUTSA preemption, Tennessee courts would apply the "same proof" test. Cf. Partylite Gifts, Inc. v. Swiss Colony Occasions, 246 F. App'x 969, 976 (6th Cir. 2007) (affirming the district court's reliance on the "well-reasoned" opinion from Hauck); Cardinal Health 414 Inc. v. Adams, 582 F. Supp. 2d 967, 984-85 (M.D. Tenn. 2008) (applying the "same proof" test from Hauck to TUTSA preemption). Thus, Plaintiff's breach of fiduciary duty claim may survive TUTSA preemption if it is supported by facts distinct from those supporting its trade secret misappropriation claim. See Hauck, 375 F. Supp. 2d at 658; cf. Combined Metals of Chi. Ltd. P'ship v. Airtek, Inc., 985 F. Supp. 827, 830 (N.D. Ill. 1997) (holding breach of fiduciary duty claim was not preempted under the Illinois Trade Secrets Act because it was grounded on facts distinct from the facts supporting trade secrets misappropriation).

Plaintiff's breach of fiduciary duty claim is largely based on Defendant's disclosure of the China-Gilco Document to Scott England at Gilco. In this regard, Plaintiff's breach of

fiduciary duty claim is preempted by TUTSA because this set of facts is the same set of facts Plaintiff uses to support its TUTSA claim.  Plaintiff, however, has articulated facts which would demonstrate that Defendant otherwise engaged in conduct adverse to Plaintiff's interests.  For example, notwithstanding the facts surrounding the disclosure of the China-Gilco document, there is sufficient evidence in the record to support a finding that Defendant encouraged or induced Gary Xu to assist Gilco succeed in the Asian lumber market.  If true, Defendant's actions would constitute a breach of his fiduciary duty of loyalty.  Thus, there are facts in the record distinct from the facts used to support Plaintiff's TUTSA claim that support a finding that Defendant breached his fiduciary duty of loyalty.

Under the "same proof" test articulated in Hauck, the Court therefore finds that to the extent Plaintiff's breach of fiduciary duty claim is premised on the disclosure of the China-Gilco Document, Defendant's Motion for summary judgment is GRANTED; otherwise, Defendant's motion is DENIED.

**D.  Conversion**

Under Tennessee law, a cause of action for conversion requires a plaintiff to prove (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, and (3) in defiance of the owner's rights.  Paehler v. Union Planters Nat'l Bank, 971 S.W.2d 393,

398 (Tenn. Ct. App. 1997).  In the instant case, Plaintiff's
conversion claim seeks recovery solely for the misappropriation
of the China-Gilco document and the alleged trade secrets
contained therein.  Plaintiff's conversion claim is therefore
preempted by TUTSA.  See Hauck, 375 F. Supp. 2d at 661 (finding
the plaintiff's conversion claim was preempted by TUTSA because
the physical property alleged to have been stolen derived its
value from the trade secrets contained therein).  Defendant's
Motion for Summary Judgment as to Plaintiff's conversion claim
is therefore GRANTED.

**E.   Tortious Interference with Contract**

Under Tennessee law, in order to recover for tortious
interference with contract, a plaintiff must prove (1) there was
a legal contract, (2) the defendant was aware of the contract,
(3) the defendant maliciously intended to induce a breach, and
(4) the defendant's actions proximately caused a breach and
resulting damages.  Polk & Sullivan, Inc. v. United Cities Gas
Co., 783 S.W.2d 538, 543 (Tenn. 1989).  Plaintiff alleges that
Defendant tortiously interfered with the contractual
relationship that existed between Plaintiff and Gary Xu.

In April 2003, Plaintiff and Gary Xu executed an
employment agreement entitled "Non-Competition Agreement."  (See
generally Xu Employment Agreement.)  Similar to Defendant's
Employment Agreement, Xu's employment agreement contained a

31

Confidentiality provision, a Non-Competition provision, and a Non-Solicitation provision. (See id. §§ 1, 2 & 3.) Plaintiff's specific allegations with respect to its tortious interference with contract claim contend that Defendant induced Xu to breach the Confidentiality provision and the Non-Competition provision.

With respect to the Confidentiality provision, the Court finds that Plaintiff's tortious interference claim is preempted by TUTSA. Plaintiff alleges that Defendant induced Xu to disclose confidential and proprietary information to Gilco. The scope of the Confidentiality provision, the manner of Xu's alleged breach, and the alleged harm all relate exclusively to the disclosure of confidential or proprietary information. Thus, to the extent that it is based upon the Confidentiality provision, Plaintiff's tortious interference claim is synonymous with misappropriation as defined by TUTSA. Cf. Hauck, 375 F. Supp. 2d at 659 (citing Tenn. Code Ann. § 47-25-1702(1) (defining misappropriation to include "breach or inducement of a breach of a duty to maintain secrecy")).

Plaintiff's intentional interference claim, however, is not preempted by TUTSA as it relates to the Non-Competition provision. The Non-Competition provision in Xu's employment agreement imposes a contractual duty not to "be employed by, act as advisor, consultant, agent or independent contractor . . . for any company that competes" with Plaintiff. (Xu Employment

32

Agreement § 2.)  On its face, the Non-Competition provision does not relate to trade secrets or confidential information.  Thus, proof that Xu misappropriated J.T. Shannon's trade secrets is, at best, marginally relevant to Plaintiff's intentional interference claim.  Accordingly, under the "same proof" test from <u>Hauck</u>, the Court finds that TUTSA does not preempt Plaintiff's intentional interference claim to the extent that it is based on the Non-Competition provision in Xu's employment agreement.  <u>Cf.</u> <u>Hauck</u>, 375 F. Supp. 2d at 660.

The Court also finds that there is an issue of fact as to whether Defendant induced Xu to breach the Non-Competition provision in his employment contract.  Defendant's motion for summary judgment is therefore DENIED as to Plaintiff's intentional interference with contract claim.

**F.   Civil Conspiracy**

Under Tennessee law, the elements of a cause of action for civil conspiracy are (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) injury to the person or property resulting in attendant damage.  <u>Braswell v. Carothers</u>, 863 S.W.2d 722, 727 (Tenn. Ct. App. 1993).  In addition, civil conspiracy requires an underlying predicate tort

33

allegedly committed pursuant to the conspiracy.  See Hauck, 375 F. Supp. 2d at 660.

In its Amended Complaint, Plaintiff alleges that Defendant conspired with Gilco, Gary Xu, and Claire Chen "to wrongfully convert proprietary and confidential information, processes, forms pricing, and other data from the Plaintiff."  (Am. Compl. ¶ 35.)  The Court finds that Plaintiff's allegations indicate that the overriding object of the conspiracy was to disseminate Plaintiff's confidential and proprietary information.  Plaintiff's civil conspiracy claim is based upon alleged misappropriation of trade secrets and is therefore preempted by TUTSA.  Cf. Hauck, 375 F. Supp. 2d at 660-61.  Defendant's Motion for Summary Judgment as to Plaintiff's civil conspiracy is GRANTED.

### G.   Unfair Competition

Unfair competition is a "broad term encompassing 'several related torts involving improper interference with business prospects."  See Partylite Gifts, 2006 WL 2370338, at *8.  In order to recover for an unfair competition claim, the plaintiff must show that (1) the defendant engaged in conduct that amounts to a recognized tort and (2) that tort deprives the plaintiff of customers or other prospects.  B & L Corp. v. Thomas & Thorngren, Inc., 162 S.W.3d 189, 216 (Tenn. Ct. App. 2004).

The sole underlying tort that is not preempted by TUTSA, and therefore would qualify as a predicate tort, is Plaintiff's claim of intentional interference with contract.[14] (See discussion *supra* Part III.E at pp. 31-33.)  Accordingly, to the extent that Plaintiff can prove that it lost customers or business prospects as a result of interfering with the Non-Competition provision of Gary Xu's employment agreement, Plaintiff's unfair competition claim is not preempted. Plaintiff's unfair competition is preempted, however, to the extent that Plaintiff alleges that it lost customers or business prospects because of Defendant's alleged misappropriation of proprietary or confidential information.

**H.   Disparagement**

Disparagement is defined as a statement which is intended to "be understood or which is reasonably understood to cast doubt upon the existence or extent of another's property in land, chattels, or intangible things, or upon their quality." Ralph v. Pipkin, 183 S.W.3d 362, 369 (Tenn. Ct. App. 2005). Plaintiff's Amended Complaint alleges that Defendant "engaged in disparagement of the Plaintiff, its management and products, and has damaged the goodwill and reputation of the Plaintiff in the Chinese and Asian markets as well as North America."  Plaintiff,

---

[14]    Thus, if the jury finds that Defendant did not tortiously interfere with the Non-Competition provision of Gary Xu's employment agreement, Plaintiff's unfair competition claim necessarily fails as a matter of law.

however, has not provided any proof of disparaging comments. Defendant's motion for summary judgment is therefore GRANTED as to Plaintiff's disparagement claim.

### I.  Fraud

Plaintiff's complaint also alleges that Defendant "engaged in fraud," "concealed unlawful and improper communications," and engaged in "industrial espionage."  (Am. Compl. ¶¶ 31 & 32.) Plaintiff, however, has not offered proof to support its fraud claim and did not respond to Defendant's motion for summary judgment as to the fraud claim.[15]  Defendant's Motion for Summary Judgment as to Plaintiff's fraud claim is therefore GRANTED.

### IV.  <u>Conclusion</u>

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED.  Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART as follows:

(1)  As to Plaintiff's misappropriation of trade secrets claim, Defendant's Motion for Summary Judgment is DENIED;

(2)  As to Plaintiff's claims of conversion, civil conspiracy, disparagement, and fraud, Defendant's Motion for Summary Judgment is GRANTED;

(3)  As to Plaintiff's breach of fiduciary duty of loyalty claim, Defendant's Motion for Summary Judgment is GRANTED

---

[15]  To the extent that Plaintiff's fraud claim is based on the disclosure of the China-Gilco document and the alleged trade secrets contained therein, it would be preempted by TUTSA.  <u>See</u> <u>Hauck</u>, 375 F. Supp. 2d at 658.

to the extent that claim is premised on the disclosure of the China-Gilco Document; otherwise, Defendant's motion is DENIED;

(4) As to Plaintiff's tortious interference with contract claim, Defendant's Motion for Summary Judgment is GRANTED to the extent that claim is premised on an alleged breach of the Confidentiality provision in Gary Xu's Employment Agreement; Defendant's motion is DENIED to the extent that claim is premised on an alleged breach of the Non-competition provision in Gary Xu's Employment Agreement;

(5) As to Plaintiff's unfair competition claim, Defendant's Motion for Summary Judgment is GRANTED to the extent that Plaintiff lost customers or business prospects because of Defendant's alleged misrepresentation of proprietary or confidential information; Defendant's motion is DENIED to the extent that Plaintiff can prove that it lost customers or business prospects as a result of interfering with the Non-competition provision of Gary Xu's employment agreement.

Therefore, this case shall proceed as to the following theories:

(1) TUTSA trade secret misappropriation;

(2) Breach of Defendant's Employment Agreement;

(3)   Breach of fiduciary duty, to the extent that this claim
      is not premised on the disclosure of the China-Gilco
      Document;

(4)   Tortious interference with contract, to the extent
      Defendant allegedly induced Gary Xu to breach the Non-
      Competition provision in his employment contract; and

(5)   Unfair competition, to the extent that Plaintiff can
      prove that it lost customers or business prospects as a
      result of interfering with the Non-Competition provision
      of Gary Xu's employment agreement.

Defendant's Motion to Disregard (D.E. 235) is DENIED as moot.

      **SO ORDERED** this 4th day of August, 2010.


                              /s/ JON PHIPPS McCALLA
                              CHIEF UNITED STATES DISTRICT JUDGE