**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | |
|---|---|
| J.T. SHANNON LUMBER CO., INC., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | No.  2:07-cv-02847-JPM-tmp |
| ) | |
| RICHARD BARRETT, ) | |
| ) | |
|     Defendant. ) | |

---

**JURY INSTRUCTIONS**

---

Ladies and gentleman of the jury, we have now come to the point in the case when it is my duty to instruct you in the law that applies to the case and you must follow the law as I state it to you.

As jurors it is your exclusive duty to decide all questions of fact submitted to you and for that purpose to determine the effect and value of the evidence.  You must not be influenced by sympathy, bias, prejudice, or passion.

You are not to single out any particular part of the instructions and ignore the rest, but you are to consider all the instructions as a whole and regard each in the light of all the others.

1

I.  GENERAL INSTRUCTIONS

Corporations Not to be Prejudiced


In this case, the Plaintiff, J.T. Shannon Lumber Co., Inc. ("J.T. Shannon"), is a corporation.  The fact that a corporation is a party must not prejudice you in your deliberations or in your verdict.

You may not discriminate between corporations and natural individuals.  Both are persons in the eyes of the law, and both are entitled to the same fair and impartial consideration and to justice by the same legal standards.


This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A corporation is entitled to the same fair trial at your hands as a private individual.  All persons, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice.

When a corporation is a party in a case, that does not mean that only one body can be considered by you in determining its claims or its liability in the case.  A corporation acts not only

2

through the policies and decisions that it makes, but also through its designated supervisory employees and others designated by the corporation to act on its behalf.

As you apply subsequent portions of these instructions you will have to determine whether or not individual corporate employees or others were authorized to act on behalf of the corporation when that individual did what he or she did.

<u>Burden of Proof and Consideration of the Evidence</u>

I will now instruct you with regard to where the law places the burden of making out and supporting the facts necessary to prove the theories in the case.

When, as in this case, the Defendant denies some of the material allegations of the Plaintiff's claim, the law places upon the Plaintiff the burden of supporting and making out each disputed element of each claim by the greater weight or preponderance of the evidence.

Preponderance of the evidence means that amount of factual information presented to you in this trial that is sufficient to cause you to believe that an allegation is probably true.  In order to preponderate, the evidence must have the greater convincing effect in the formation of your belief.  If the evidence on a particular issue appears to be equally balanced, the party having the burden of proving that issue — in this case, the Plaintiff — must fail.

You must consider all the evidence pertaining to every issue, regardless of who presented it.

4

<u>Clear and Convincing Evidence</u>

As I have indicated, the law places the burden of proof on the party asserting a claim by the greater weight or preponderance of the evidence as to each claim asserted in this case.  There is, however, a different burden of proof that applies to certain claims and/or damages calculations.

Clear and convincing evidence is a higher standard than preponderance of the evidence.  It means evidence that clearly shows there is no serious or substantial doubt about the correctness of the conclusion to be drawn from the evidence.

In a moment, we will discuss the legal theories at issue in this case.  I will give you specific instructions regarding which claims must be proven by a preponderance of the evidence and which claims must be proven by clear and convincing evidence.

Weighing the Evidence

You members of the jury are judges of the facts concerning the controversy involved in this lawsuit.  In order for you to determine what the true facts are, you are called upon to weigh the testimony of every witness who has appeared before you, and to give the testimony of each witness the weight, faith, credit, and value to which you think it is entitled.

You will note the manner and demeanor of each witness while on the stand.  You must consider whether the witness impressed you as one who was telling the truth or one who was telling a falsehood and whether or not the witness was a frank witness. You should consider the reasonableness or unreasonableness of the testimony of the witness; the opportunity or lack of opportunity of the witness to know the facts about which he or she testified; the intelligence or lack of intelligence of the witness; the interest of the witness in the result of the lawsuit, if any; the relationship of the witness to any of the parties to the lawsuit, if any; and whether the witness testified inconsistently while on the witness stand, or if the witness said or did something or failed to say or do something at any other time that is inconsistent with what the witness said while testifying.

If a witness is shown to have knowingly testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars, and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.  An act or omission is done "knowingly" if it is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

These are the rules that should guide you, along with your common judgment, your common experience, and your common observations gained by you in your various walks in life, in weighing the testimony of the witnesses who have appeared before you in this case.  If there is a conflict in the testimony of the witnesses, it is your duty to reconcile that conflict if you can, because the law presumes that every witness has attempted to and has testified to the truth.  But if there is a conflict in the testimony of the witnesses, which you are not able to reconcile in accordance with these instructions, then it is with you absolutely to determine which witnesses you believe have testified to the truth and which ones you believe have testified to a falsehood.

Immaterial discrepancies do not affect a witness's testimony, but material discrepancies do.  In weighing the effect of a discrepancy, always consider whether it pertains to a matter

7

of importance or an unimportant detail, and whether the
discrepancy results from innocent error or intentional falsehood.

The greater weight or preponderance of the evidence in a
case is not determined by the number of witnesses testifying to a
particular fact or a particular state of facts.  Rather, it
depends on the weight, credit, and value of the total evidence on
either side of the issue, and of this you jurors are the
exclusive judges.

Remember, you are the sole and exclusive judges of the
credibility or believability of the witnesses who have testified
in this case.  Ultimately, you must decide which witnesses you
believe and how important you think their testimony was.  You are
not required to accept or reject everything a witness says.  You
are free to believe all, none, or part of any person's testimony.

<u>Direct and Circumstantial Evidence</u>

There are two kinds of evidence - direct and circumstantial. Direct evidence is testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is indirect evidence - that is, it is proof of one or more facts from which one can find another fact.

You may consider both direct and circumstantial evidence in deciding this case.  The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

<u>What is Evidence?</u>

The evidence from which you are to decide what the facts are consists of:

(1)  The sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness;

(2)  The exhibits which have been received into evidence; and

(3)  Any facts to which all the lawyers have agreed or stipulated.

<u>What is Not Evidence</u>

Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)  Arguments and statements by lawyers are not evidence.

(2)  Questions and objections by lawyers are not evidence.

(3)  Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4)  Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

11

<u>Statements of Counsel</u>

You must not consider as evidence any statements of counsel made during the trial.  If, however, counsel for the parties have stipulated to any fact, or any fact has been admitted by counsel, you will regard that fact as being conclusively established.

As to any questions to which an objection was sustained, you must not speculate as to what the answer might have been or as to the reason for the objection, and you must assume that the answer would be of no value to you in your deliberations.

You must not consider for any purpose any offer of evidence that was rejected, or any evidence that was stricken out by the Court.  Such matter is to be treated as though you had never known it.

You must never speculate to be true any insinuation suggested by a question asked a witness.  A question is not evidence.  It may be considered only as it supplies meaning to the answer.

12

Comments by the Court

During the course of a trial on a few occasions, I occasionally asked questions of a witness in order to bring out facts not then fully covered in the testimony.  Please do not assume that I hold any opinion on the matters to which my questions may have related.  Remember that you, as jurors, are at liberty to disregard all comments of the Court in arriving at your own findings as to the facts.

On the other hand, you are required to follow the court's instructions on the law, whether you agree with these instructions or not.

<u>Juror Notes</u>

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence.  If you have taken notes, remember that your notes are solely to assist you, individually, in refreshing your recollection regarding the testimony and other evidence in the case.  Your notes are personal and are not to be shared with your fellow jurors.

14

<u>Deposition Testimony</u>

Certain testimony has been presented by deposition.  A
deposition is testimony taken under oath before the trial and
preserved in writing. You are to consider that testimony as if it
had been given in court.

While most depositions are simply the testimony of an
individual regarding what that individual personally knows,
certain witnesses in this case have been designated by the
corporation to testify on its behalf at a deposition on
designated topics.  It is not literally possible to take the
deposition of a corporation; instead, when a corporation is
involved, the testimony must be obtained from natural persons
designated by the corporation to speak on its behalf on the
designated topics.  Testimony given by such a person, designated
to speak on behalf of the corporation, is testimony on behalf of
the corporation; such testimony is binding upon the corporation
on those designated topics as if given by the corporation itself.

<u>Opinion/Testimony</u>

You have heard the testimony of Z. Christopher Mercer who rendered an opinion in this case.  A witness who is allowed to render an opinion has special knowledge or experience that allows him/her to give an opinion.

You do not have to accept the opinion of such a witness.  In deciding how much weight to give it, you should consider the witness's qualifications and how she or he reached her or his conclusions.

Remember that you alone decide how much of a witness's testimony to believe, and how much weight it deserves.

16

<u>"Inferences" Defined</u>

Although you are to consider only the evidence in the case, you are not limited to the statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You may draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experience.

Inferences are deductions or conclusions that reason and common sense lead you to make from facts established by the evidence in the case.

17

<u>Limited Admission of Evidence</u>

You will recall that during the course of this trial certain evidence was admitted for a limited purpose only.  You must not consider such evidence for any other purpose.

For example, four exhibits – Exhibits 34, 35, 36, and 54 – were admitted for a limited purpose – that is, on the question of whether or not certain information was secret or confidential. Those materials were received for that limited purpose and no other.  As to any other matter, before you, it must be as though you had never known of those exhibits.  Likewise, evidence admitted only to show notice of an asserted fact to a witness cannot be considered for the truth or accurateness of the matter it concerns.

<u>Demonstrative Charts and Summaries</u>


Certain demonstrative charts and summaries have been shown
to you in order to help explain facts disclosed by books,
records, and other documents that are in evidence in the case.
These demonstrative charts and summaries are not themselves
evidence or proof of any facts.  If the demonstrative
charts/summaries do not correctly reflect facts or figures shown
by the evidence in the case, you should disregard them.

<u>Documents</u>

You may notice that certain documents in this case have been stamped as "confidential" and/or "attorneys eyes only" as part of this litigation.  You should ignore the stamps as they are not evidence in the case.  However, if the "confidential" or "proprietary" markings were on the document apart from this litigation, then you should consider those designations as evidence in the case.

Nevertheless, any documents containing any of the markings discussed above should not be disclosed or used by you or others outside this lawsuit.  Additionally, any testimony presented which is confidential or of a sensitive proprietary nature should not be disclosed or used by you or anyone else outside of this case.

<u>Failure to Produce Evidence</u>

You have heard evidence that two computers used by Mr. Barrett were lost and that those computers may have contained evidence that is at issue in this case.

If a party fails to produce evidence that is under his control and reasonably available to that party and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not.  On the other hand, sometimes evidence is lost or destroyed for an innocent reason or a reason out of the control of a party.  In such circumstances, the loss or destruction of the evidence should not lead to an inference that is unfavorable to that party.

Decision Must be Based on the Record
==

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

If either party has failed to call a witness, you must ask yourself if the witness was equally available to the other party. Neither party is required to call witnesses who are equally available to the other party.

"Equally available" simply means that there is no legal impediment to the witness talking to a party.  Other than a party's employees, generally other witnesses are "equally available" under the law to all parties, despite the fact that it may be inconvenient or expensive for a party to obtain the witness' testimony.

You must decide this case based on the record presented in the courtroom (i.e., the testimony, exhibits, and stipulations placed in evidence) and must not speculate about witnesses or documents that were not presented in the courtroom.

22

## II.  STIPULATIONS AND THEORIES IN THIS CASE

### Stipulated Facts

Before the trial of this case, the parties agreed to the truth of certain facts which underlie this action.  As a result of this agreement, the Plaintiff and Defendant entered into a stipulation in which they agreed that the stipulated facts could be taken as true without either party presenting further proof on the matter.  This procedure is often followed to save time in establishing facts which are undisputed.

Facts stipulated to by the parties in this case are as follows:

(1)  With respect to his employment with Shannon, Gary Xu signed an Employment Agreement which Mr. Barrett signed on behalf of Shannon.

(2)  Demand both domestically and internationally was such that Shannon could not dry and produce sufficient lumber to meet what it could sell in China.  In particular, poplar wood was being widely used in China to manufacture furniture, and Mr. Barrett approached Scott England of Gilco to let him know that Shannon could sell Gilco's poplar lumber in China.  This arrangement "worked for me [Barrett/Shannon], worked

for Scott [England of Gilco]."

(3)   Mr. Barrett sent the document named "China GILCO.doc", which Mr. Barrett wrote, to Scott England on February 9, 2006.

(4)   A number of suppliers in the hardwood lumber market rely upon various sources for certain historical pricing information for hardwood lumber, including, but not limited to, the *Hardwood Review, Hardwood Review Export*, and the *Hardwood Market Report*.

(5)   Shannon declined to enter a joint venture with Gilco.

(6)   Mr. Barrett expressed his desire to start an industry newsletter and presented to Jack Shannon, Jr. a 76 page business plan for the North American Hardwood Report listing Mr. Shannon as a proposed member of the Advisory Board of Directors of North American Hardwood Report, and Mr. Barrett told Mr. Shannon that he was resigning from Shannon to begin the North American Hardwood Report.

(7)   Gary Xu is a Chinese national hired by Shannon to work in the China office and to maintain regular contact with Shannon International's Chinese customers.

(8)   At the inception of Mr. Xu's employment with Shannon, he signed a document containing noncompete, nonsolicitation, and confidentiality clauses.

(9)   J.T. Shannon Lumber Company, Inc. is a Mississippi

corporation with its principal place of business in Horn Lake, Mississippi.

(10) Jack Shannon, Jr. is the sole owner, President and Chief Executive Officer of J.T. Shannon Lumber Company, Inc.

Theories of the Plaintiff

The Plaintiff J.T. Shannon is in the business of selling hardwood lumber products. In June, 2001, J.T. Shannon hired the Defendant Richard Barrett ("Defendant" or "Barrett") as "Territory Manager of the Midwest Region" and Mr. Barrett was promoted several months later, on January 1, 2002, to Vice President of Sales. Mr. Barrett, as part of his employment with J.T. Shannon, entered into an "Employment Agreement" in which Mr. Barrett agreed that he would not reveal confidential information to anyone not associated with J.T. Shannon; that he would not compete with J.T. Shannon while he was employed by J.T. Shannon, that he would not compete with J.T. Shannon for one year after he left J.T. Shannon's employment, and that he would not try to hire or encourage any employees of J.T. Shannon to leave J.T. Shannon nor would he try to encourage any customers or suppliers of J.T. Shannon to discontinue doing business with Shannon for a period of time after he left the employment of J.T. Shannon.

Shannon contends that Mr. Barrett has breached these agreements and that he did not live up to the obligations imposed on him as an officer and employee of J.T. Shannon to conduct himself in a loyal manner with his employer and not to help J.T. Shannon's competitors. Specifically, among other of its claims, J.T. Shannon contends that Mr. Barrett prepared a document for a company named Gilco Lumber and emailed the document to Gilco to

27

assist Gilco in selling hardwood lumber in China and Asia in direct competition with J.T. Shannon.  J.T. Shannon contends that Gilco had been a major supplier to J.T. Shannon in J.T. Shannon's successful efforts to open an office in Shanghai, China and to sell hardwood lumber products in China and Asia which later became Shannon's competitor in China and Asia by selling directly to the customers in Asia that had previously purchased hardwood lumber from J.T. Shannon.

J.T. Shannon has brought this lawsuit against Mr. Barrett alleging: (1) that Mr. Barrett misappropriated trade secrets in violation of the Tennessee Uniform Trade Secrets Act ("TUTSA"); (2) that Mr. Barrett breached his Employment Agreement with J.T. Shannon which contained confidentiality, non-competition and non-solicitation provisions; (3) that Mr. Barrett breached the fiduciary duty/duty of loyalty he owed to J.T. Shannon as an officer and employee; (4) that Mr. Barrett tortiously interfered with the non-compete provision in Gary Xu's employment contract with J.T. Shannon; and (5) that Mr. Barrett is liable for unfair competition.  J.T. Shannon seeks to recover damages it contends were caused in whole or in part by reason of Mr. Barrett's conduct.

Theories of the Defendant

Richard Barrett worked for Plaintiff J.T. Shannon Lumber Company, Inc. and was involved in opening a China office for a company named Shannon Lumber International, Inc.  J.T. Shannon claims that Mr. Barrett disclosed J.T. Shannon Lumber's trade secrets during his employment to a supplier of J.T. Shannon, a company named Gilco Lumber, and that Mr. Barrett assisted Gilco in using J.T. Shannon's proprietary information to begin competing in China after Mr. Barrett's employment ended.  J.T. Shannon also claims Mr. Barrett violated a non-compete clause after his employment terminated.

Mr. Barrett denies he did anything wrong.  Mr. Barrett maintains that J.T. Shannon's claims have no merit, that he was authorized to do what he did while working for J.T. Shannon, that he did not disclose anything that was secret and that after Mr. Barrett left J.T. Shannon, J.T. Shannon and its CEO Jack Shannon ended the supply relationship with Gilco that lead to Gilco's direct sales efforts in China and/or Asia.  Mr. Barrett asserts that he was not responsible for that at all.  Mr. Barrett denies he violated the terms of any non-compete clause.  Barrett denies that his activities after his employment terminated violated any right of J.T. Shannon.  Mr. Barrett asserts that any problems or losses of J.T. Shannon were caused by Shannon's own actions.

III.  GENERAL INSTRUCTIONS ON THE APPLICABLE LAW

Turning now to the legal theories in the case, it is my duty to tell you what the law is.  If any lawyer has told you that the law is different from what I tell you it is, you must, of course, take the law as I give it to you.  That is my duty.  However, it is your duty, and yours alone, to determine what the facts are and after you have determined what the facts are, to apply those facts to the law as I give it to you, free from any bias, prejudice or sympathy, either one way or the other.

In this case, there are five (5) claims by Plaintiff J.T. Shannon Lumber Co. against Defendant Richard Barrett:  (1) misappropriation of trade secrets, (2) breach of contract, (3) breach of common law fiduciary duty of loyalty, (4) tortious interference with contract, and (5) unfair competition.

I will first instruct you regarding the elements that must be established by a preponderance of the evidence as to the misappropriation of trade secrets claims.  I will then instruct you regarding the breach of contract claim.  I will then instruct you regarding the breach of fiduciary duty claim.  I will then instruct you regarding the tortious interference with contract and unfair competition claims.

## A.  Misappropriation of Trade Secrets

The Court will now instruct you regarding J.T. Shannon's first theory of relief - Misappropriation of Trade Secrets under the Tennessee Uniform Trade Secrets Act ("TUTSA").

J.T. Shannon has asserted a claim of misappropriation of trade secrets under Tennessee statutory law, Tennessee Code Annotated §§ 47-25-1701-1709, against Richard Barrett in this case.  Plaintiff contends that the February 9, 2006 email ("China-Gilco Document") and the documents and emails in Trial Exhibits 5, 6, 8, and 9 and their attachments constituted J.T. Shannon trade secrets and by emailing these documents to Scott England, Defendant misappropriated J.T. Shannon's trade secrets. Mr. Barrett denies that this information is protectible as a trade secret and denies that he misappropriated this information. Plaintiff also claims that the Defendant's alleged misappropriation caused harm and continues to cause harm to Plaintiff.

You must decide these trade secret issues in accordance with the instructions as I give them to you.

<u>Misappropriation of Trade Secrets - Elements</u>

To prevail on its misappropriation of trade secrets claim, J.T. Shannon must prove:

(1)  The existence of a trade secret;

(2)  Mr. Barrett misappropriated that trade secret; and

(3)  The misappropriation resulted in detriment to J.T. Shannon.

<u>First Element - Definition of a Trade Secret</u>

I will now explain the first element in more detail.  The first element that the plaintiff must prove by the greater weight or preponderance of the evidence is the existence of a trade secret.

A trade secret is:

(1)   Any information, without regard to form, including, but not limited to, technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan; which

(2)   Derives independent economic value, either actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

(3)   Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The law does not require the plaintiff to prove that it owns the asserted trade secret information.  Instead, J.T. Shannon is only required to show that it has possession of the information and that the information satisfies the three requirements set out above.

33

<u>Independent Economic Value</u>

Information which gives the owner or possessor of the information a competitive advantage in the marketplace over those who do not have knowledge of the information could be considered to "derive independent economic value" from not being generally known.

## Employer's Reasonable Efforts to Maintain Secrecy

J.T. Shannon is required to take reasonable steps under the circumstances to protect any information which it claims is its trade secret(s). This does not require absolute secrecy or that J.T. Shannon use all conceivable efforts to maintain secrecy.  If J.T. Shannon did not take reasonable steps to protect its trade secrets, you must find for the Defendant as to any trade secret claim as to which you make that determination.  This, of course, is for you the jury to decide.

Although efforts must be made to maintain an alleged trade secret's secrecy, absolute secrecy is not required in order to find that it qualifies as a trade secret.  Additionally, the alleged trade secret may be disclosed to employees involved in J.T. Shannon's use of the trade secret, or to non-employees, if the people to whom the disclosure was made are obligated to keep the information secret.

Secrecy of Information

If the information Plaintiff claims to be a trade secret could be readily learned by legitimate methods, no one may claim it as a trade secret.  For example, if the information is readily ascertainable by means such as by reading publicly available literature, examining publicly available products, or if the information is commonly known in an industry, then the information cannot qualify as a "trade secret."  Certain types of information are not confidential and therefore cannot be considered "trade secret" information: (1) specific needs and business habits of certain customers; and (2) an employee's personality and the relationships that he has established with certain customers.

However, the fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements.  Hence, a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which in unique combination, affords a competitive advantage and is a protectible secret.

Information which was acquired by the Defendant through the confidential relationship may be protected even if the information potentially could have otherwise been obtained through independent research. This is particularly true where acquisition of the information through independent research would be difficult, costly, or time consuming.

<u>Employee's Duty to Maintain Secrecy</u>

An employee who leaves an employer may use the knowledge, memory, skill and experience that the employee gained while working for the former employer for his or her own benefit or for the benefit of a new employer as long as that knowledge, memory, skill and experience is not a trade secret.  Trade secrets belong to the former employer and the employee cannot use them without the permission of the former employer.

<u>Factors in Determining the Existence of a Trade Secret</u>

In determining whether a particular piece of information qualifies as a trade secret, you may consider the following:

(1)   The extent to which the information is known outside of the business;

(2)   the extent to which it is known by employees and others involved in the business;

(3)   the extent of measures taken by the business to guard the secrecy of the information;

(4)   the value of the information to the business and to its competitors;

(5)   the amount of money or effort expended by the business in developing the information; and

(6)   the ease or difficulty with which the information could be properly acquired or duplicated by others.

If the plaintiff has established by a preponderance of the evidence each of the facts necessary to prove the existence of a trade secret(s), you must then determine whether Defendant misappropriated that trade secret or trade secrets.

39

Second Element - Misappropriation

I will now explain the second element in more detail.  The second element that the Plaintiff must prove by the greater weight or preponderance of the evidence is the misappropriation of the trade secret by the defendant.  There are 5 ways in this case in which a person may be found to have misappropriated a trade secret under the law.

"Misappropriation" can occur in any of the following ways:

(1)  Acquisition of a trade secret is improper if the person acquiring the trade secret from another knows or has reason to know that the other used improper means to acquire the trade secret.

(2)  Disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret.

(3)  Disclosure or use of a trade secret of another without express or implied consent by a person who, at the time of disclosure or use, knew or had reason to know that that person's knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it.

40

(4) Disclosure or use of a trade secret of another without express or implied consent by a person who, at the time of disclosure or use, knew or had reason to know that that person's knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

(5) Disclosure or use of a trade secret of another without express or implied consent by a person who, at the time of disclosure or use, knew or had reason to know that that person's knowledge of the trade secret was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use. In other words, disclosure or use of a trade secret is improper if, at the time of the disclosure or use, the person disclosing or using the trade secret knew or had reason to know that the information was derived from or through a person who owed a duty to J.T. Shannon to maintain its secrecy or limit its use.

41

<u>Important Definitions for Misappropriation Element</u>

"Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy or limit use, or espionage through electronic or other means.

To "know" means to have actual knowledge of or to be aware of.

"Reason to know" means having actual knowledge or knowledge sufficient that a reasonable person would have inquired further. Actual knowledge is not required; constructive notice is sufficient.  A defendant is on constructive notice when, from the information he/it has, a reasonable person would infer a misappropriation of trade secret, or if, under the circumstances, a reasonable person would be put on notice and an inquiry pursued with reasonable intelligence and diligence would disclose the misappropriation.

To be liable for misappropriation of trade secrets, a

defendant need not use the trade secret in exactly the same form in which he/it received it.  You do not need to find that Defendant copied or used each and every part of the trade secret. A defendant may be liable even if it uses the trade secret with modifications or improvements that defendant made to it.

Disclosure or use of a trade secret is not improper if the owner of the information consented to the disclosure or use. Under the law, more than one person can rightfully possess a trade secret.

Summary - Second Element

If you find by the greater weight or preponderance of the evidence that the defendant has misappropriated a trade secret of J.T Shannon by any one of the five (5) ways set out above in these instructions, then as to the Defendant, the second element has been satisfied, and you must determine whether the evidence establishes the third element - that the misappropriation resulted in a detriment to J.T. Shannon.

<u>Third Element - Detriment</u>

In order to establish the third element, the plaintiff must establish by the greater weight or preponderance of the evidence that the misappropriation proximately caused economic harm or detriment to J.T. Shannon.

A proximate cause of any detriment or economic harm is a cause which, in natural and continuous sequence, produces a harm or detriment, and without which the harm or detriment would not have occurred.  Harm or detriment can be caused by the acts or omissions of one or more persons acting at the same or different times.

If you find that a party misappropriated a trade secret or trade secrets and that the misappropriation was a cause of the harm or detriment for which a claim was made, you have found that party to be liable for misappropriation of a trade secret or trade secrets.

45

## Summary - Misappropriation of Trade Secrets

If J.T Shannon Lumber Co., Inc. has proven each of the three elements of misappropriation of trade secrets by a preponderance of the evidence as to the Defendant, then you must return a verdict for J.T. Shannon by answering the appropriate question under Verdict Form Questions 1 or 2 with a "Yes." If J.T Shannon has failed to show any one of the three elements by a preponderance of the evidence as to the Defendant, then you must return a verdict for the Defendant and answer the applicable question on the Verdict Form "No."

Note that there are two Questions on the Verdict that are about specific asserted trade secrets. Each question – Question No. 1 and Question No. 2 – is to be analyzed independently and separately, applying the law given to you regarding the specifically asserted trade secret misappropriation. Your answer as to one question should not influence your answer as to the other question.

46

<u>B.  Breach of Contract</u>

<u>Summary of Contract Issues</u>

The Court will now instruct you regarding Plaintiff's second theory of relief - Breach of Contract.

J.T Shannon asserts breach of contract claims against Mr. Barrett.  There is one contract that is the subject of Plaintiff's breach of contract claims that you must decide in this case: An agreement entered into between J.T. Shannon and Richard Barrett titled "Employment Agreement."  The Employment Agreement contains three provisions relevant to Plaintiff's breach of contract claim:

(1)    A Confidentiality provision;

(2)    A Non-Solicitation provision; and

(3)    A Non-Competition provision.

You must decide the contract issues according to the instructions that I will give to you.

47

<u>Contract Law</u>

I will now instruct you as to the law regarding the contract claims.  The following three elements must be proven by the greater weight or preponderance of the evidence in order to prove a breach of contract:

(1)  The existence of the contract;

(2)  An unexcused non-performance of an obligation under the contract amounting to a breach of contract; and

(3)  Damages caused by the breach.

Once an unexcused breach of contract has been proven, at least nominal damages are presumed.  I will instruct you concerning damages later in these instructions.

I will now further define the terms I have just set out regarding breach of contract.

48

<u>Contract—Defined</u>

A contract is an agreement or exchange of promises between two or more persons to do or not to do certain things. This agreement or exchange of promises can be oral or in writing and must be supported by something of value. The requirements for a valid contract are an offer, an acceptance, consideration, competent parties, and a legal purpose.

There is no dispute in this case regarding the existence of the contract asserted.   Therefore you can accept this fact as established.

Contract-Interpretation

In construing a contract, you shall use the following rules of construction. In the construction or interpretation of a contract, common sense and good faith are the leading touchstones of the inquiry.  All contracts should receive a sensible and reasonable construction and not such a construction as will lead to an absurd consequence.  The language of the contract records the agreement of the parties.

When a provision is ambiguous, the intent of the parties controls.  The intent of the parties is a question of fact to be resolved by you, the jury, when the contract is ambiguous. In attempting to ascertain the parties' intention, the situation of the parties, as well as their purposes at the time the contract was entered, must be determined.

A contract is ambiguous when the terms of the contract are inconsistent on their face, or are reasonably susceptible of more than one interpretation.  A contract is ambiguous only when it may fairly and reasonably be understood in more ways than one. An ambiguous contract is one that can be understood in more ways than just one or is unclear because it expresses its purpose in an indefinite manner.

Ambiguities must be construed against the party who prepared the contract.  A provision of a contract which does not clearly express the intention of the parties should be construed against the one for whose benefit it was inserted. Ambiguous language in a contract should be construed liberally and most strongly in favor of the party who did not write or prepare the contract and is not responsible for the ambiguity.  Where a contract is entered into upon a printed form prepared by a party, the language of the contract will be strictly construed against that party.

Parties to a contract are not expected to exercise clairvoyance in spotting hidden ambiguities in the contract and they are protected if they innocently construe in their own favor an ambiguity susceptible of another interpretation.

When there is no ambiguity in a contract, it must be construed according to the terms which the parties have used and terms used in the contract should be taken and understood in their plain, ordinary, and popular sense.  Language used in a contract must be interpreted in its natural and ordinary sense.

The rights of the parties to a contract must be measured by the contract which the parties themselves made.  The jury is not in the business of making a contract for a party.

The intention of a contract is to be determined from the language.  Language which is perfectly clear determines the full force and effect of the document.

In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties.  The intent and purport of a written contract must be gathered from the contents of the entire agreement and not from any particular clause or provision therein.  Every term contained in a contract must be considered and given effect if possible.

If the language of the contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and the contract's language determines the instrument's force and effect.

Contract–Breach of Contract Defined
_____

When a valid contract has been established, you must
determine whether the defendant breached the contract. If a party
does not perform according to the contract terms, that party has
committed a breach of the contract.  Any unexcused breach of
contract allows a non-breaching party to recover damages.

The breach of contract must be a material breach.  A minor
and insubstantial failure of a party to meet the terms of a
contract does not entitle the other party to reject the contract
and not be responsible under it.

If a party does not perform according to contract terms,
that party has committed a breach of contract.  Any unexcused
breach of a contract allows the non-breaching party to recover
damages.  In addition, in order for a breach of contract to
provide a claim for relief in a lawsuit, the breach must be
material.  "Material" in this context means a substantial breach,
or more than a minor or insubstantial failure of a party to meet
the terms of the contract.

Factors you may consider in determining whether a breach is material include the following:

(1)  the extent to which the injured party will be deprived of the expected benefits under the contract;

(2)  the extent to which the injured party can be adequately compensated for loss of benefit;

(3)  the extent to which the non-performing party will suffer forfeiture (i.e., a divestiture of specific property without compensation);

(4)  the likelihood that the non-performer will cure, that is, correct the failure or has cured the failure, taking into account the circumstances including any reasonable assurances; and

(5)  the extent to which the behavior of the non-performing party comports to standards of good faith and fair dealing.  Although none of the above factors alone is dispositive on the question of whether a breach is material, they should guide your decision.

The agreements in this case were contained in a written document.  The law is that contracts are to be applied as they are written.  This means that a party to a contract is required to do what he or it agreed; however, the party is not required to do things he or it did not agree to, as determined by the contract's language.  Language in a contract should be

interpreted according to its ordinary plain meaning.

Thus, the first thing that you must determine in deciding these breach of contract claims is whether the party accused of breach of contract did something that was prohibited by the specific provisions of the contract, or failed to do something that the contract specifically required.

In order for a party who/that asserts a breach of contract to be entitled to relief on these breach of contract claims, it must first prove by a preponderance of the evidence that the accused party breached his agreement(s) and that the breach was material.

If you determine that there was a material breach of a contract provision, then you must determine whether the party asserting breach of contract has proved by a preponderance of the evidence that a breach caused the party claiming breach to sustain damages, and if so, what amount of damages that breach caused.

## J.T. Shannon's Breach of Contract Claim against Richard Barrett

You must decide the following contract issues according to the instructions that I have given to you:

Has Plaintiff proven by a preponderance of the evidence that Mr. Barrett breached his "Employment Agreement" by one of more of the following:

(1)   Failing to comply with the Confidentiality provision requiring Mr. Barrett not to reveal, communicate, or in any way divulge any information, knowledge or data which he acquired or was made available to him during his employment by J.T. Shannon, including but not limited to any information which relates to J.T. Shannon's operations, suppliers, personnel, customer names, financial information, financings, revenues, expenses, acquisitions, management agreements, or other documents of a confidential nature relating to the ownership or operation of J.T. Shannon or concerning any officers, directors, employees or agents of J.T. Shannon during and subsequent to the time of Mr. Barrett's employment with J.T. Shannon;

(2)   Failing to comply with the Non-Competition provision requiring Mr. Barrett, during the period he was employed by J.T. Shannon and for a period of one (1) year thereafter,

not to own, be a partner in, operate, be employed by, act as an advisor, consultant, agent or independent contractor for, or otherwise have an interest in, either directly or indirectly, any company which competes directly or indirectly with J.T. Shannon in the Asian lumber market, without the written consent of the Company; and

(3) Failing to comply with the Non-solicitation provision requiring Mr. Barrett, during the period he was employed by J.T. Shannon and for a period two (2) years thereafter, not to solicit, entice, induce or encourage: (a) any employee(s) to leave the employment of J.T. Shannon; or (b) any customer(s) to discontinue using J.T. Shannon's services; or (c) any supplier from discontinuing supplying inventory to J.T. Shannon.

<u>Contract-Waiver Defined</u>

Waiver is the voluntary surrender of a known right. It can be proved by statements, acts, or conduct of a party showing an intent not to claim a right.

The parties may jointly agree to waive one or more requirements of the contract. If a party to the contract claims the other party waived a contract right, the burden of proof is on the party claiming the waiver to show that the other party gave up a contract right and did so with full and complete knowledge of the relevant facts.

If a party waived a particular term in the contract, that party can no longer enforce that part of the contract. Richard Barrett claims that Shannon Lumber waived its right to enforce any confidentiality provisions in Mr. Barrett's Employment Agreement and has consented to the dissemination of this information, to the extent Shannon Lumber alleges this information is legally protected confidential, proprietary, or trade secret information.  Shannon Lumber denies this.

Mr. Barrett has the burden of proof to establish waiver.  If it has been shown by the greater weight or preponderance of the

evidence that Shannon Lumber Company waived its right to enforce
the confidential provision of the Employment Agreement, then as
to Question No. 3 you must find for the defendant Richard
Barrett.

Summary of Contract Issues

If J.T. Shannon Lumber Co., Inc. has proven by a preponderance of the evidence that Richard Barrett breached the Confidentiality provision of his Employment Agreement, you must return a verdict for J.T. Shannon and answer Verdict Form Question No. 3 "Yes."  If J.T. Shannon has failed to prove by a preponderance of the evidence that Richard Barrett breached the Confidentiality provision in his Employment Agreement, you must return a verdict for Mr. Barrett and answer Verdict Form Question No. 3 "No."

If J.T. Shannon Lumber Co., Inc. has proven by a preponderance of the evidence that Richard Barrett breached the Non-Competition provision of his Employment Agreement, you must return a verdict for J.T. Shannon and answer Verdict Form Question No. 4 "Yes."  If J.T. Shannon has failed to prove by a preponderance of the evidence that Richard Barrett breached the Non-Competition provision in his Employment Agreement, you must return a verdict for Mr. Barrett and answer Verdict Form Question No. 4 "No."

If J.T. Shannon Lumber Co., Inc. has proven by a preponderance of the evidence that Richard Barrett breached the Non-Solicitation provision of his Employment Agreement, you must

60

return a verdict for J.T. Shannon and answer Verdict Form Question No. 5 "Yes." If J.T. Shannon has failed to prove by a preponderance of the evidence that Richard Barrett breached the Non-Solicitation provision in his Employment Agreement, you must return a verdict for Mr. Barrett and answer Verdict Form Question No. 5 "No."

C.  Breach of Common Law Fiduciary Duty/Duty of Loyalty

The Court will now instruct you regarding J.T. Shannon's third theory of relief – Breach of Fiduciary Duty.  J.T. Shannon asserts a common law breach of fiduciary duty/duty of loyalty against Richard Barrett.

Employees generally owe a duty of loyalty to their employers. This duty of loyalty means that the employee must act in the best interests of their employer and must not engage in any conduct that is adverse or harmful to the employer's interest.  This duty of loyalty exists only so long as the employee is employed by the employer.

Although an employee owes a duty of loyalty while employed, that employee has every right to compete with his or her former employer immediately after his or her employment ends.   In addition, an employee, while still working for his or her employer, may organize or purchase a competing business and make arrangements to compete, but may not make improper use of the employer's trade secrets in doing so.   After his or her employment ends, the employee may immediately compete under this theory.   Conduct including setting up and/or purchasing a competing business, without actually competing, is not considered a breach of the duty of loyalty.

In order to prevail on its claim against Defendant Richard Barrett for breach of his fiduciary duty/duty of loyalty as an employee, the Plaintiff must prove each of the following elements by a preponderance of the evidence:

(1)   An employment relationship existed between Defendant Richard Barrett and the Plaintiff which gave rise to a duty of loyalty;

(2)   While employed by the Plaintiff, Defendant Richard Barrett breached his duty of loyalty; and

(3)   Plaintiff was damaged because of this breach.

Corporate officers owe a high degree of loyalty to their corporation and are not permitted to deal with the corporation or its assets for their own private gain. Moreover, they cannot deal for themselves and for the corporation at one and the same time. They also may not take a business opportunity that rightfully belongs to the corporation.

Ordinarily, employees must act solely for the benefit of the employer in matters within the scope of their employment and not engage in conduct that is adverse to the employer's interest. This includes an obligation not to compete with the employer during the employment relationship.

<u>Breach of Fiduciary Duty/Duty of Loyalty based upon</u>
<u>Misappropriation of Trade Secrets</u>

The Court must point out one limitation on your ability to find that Defendant breached a fiduciary duty owed to J.T. Shannon.  Prior to the enactment of the Tennessee Uniform Trade Secrets Act, a person could breach his or her fiduciary duty by misappropriating a trade secret in accordance with the instructions above.  The Tennessee Legislature in the Tennessee Uniform Trade Secrets Act, however, preempted, or displaced, all conflicting tort, restitutionary, and other state law providing for damages for misappropriation of a trade secret.

What this means is that if you, the jury, find that Mr. Barrett breached his fiduciary duty solely by misappropriating J.T. Shannon's trade secrets, then you may not find Defendant Barrett liable for breach of fiduciary duty/duty of loyalty. However, if you find that Mr. Barrett breached his fiduciary duty in some manner other than by misappropriating trade secrets, then you may find Mr. Barrett liable for breach of fiduciary duty/duty of loyalty.

Summary of Breach of Fiduciary Duty/Duty of Loyalty Claim

If you find that Richard Barrett owed a common law fiduciary duty/duty of loyalty to J.T. Shannon Lumber Co., Inc. and breached that duty in some manner other than by misappropriating trade secrets, you must enter a verdict in favor of J.T. Shannon and answer Verdict Form Question No. 6 "Yes." If J.T. Shannon has failed to prove by a preponderance of the evidence that Mr. Barrett owed a fiduciary duty/duty of loyalty and breached that duty, or that Mr. Barrett breached his fiduciary duty solely by misappropriating trade secrets, then you must return a verdict for the Defendant and answer Verdict Form Question No. 6 "No."

## D. Tortious Interference with Contract

I will now instruct you as to the law regarding the Plaintiff's fourth theory of recovery – tortious interference with contract.  J.T. Shannon alleges that Defendant Barrett tortiously interfered with Gary Xu's contract with J.T Shannon by inducing Gary Xu to breach the Non-Competition provision in Gary Xu's employment contract.

In Tennessee, there are two sources of law that allow for recovery of tortious interference of contract: Tennessee common law and Tennessee statutory law.  The elements for the common law and statutory claims of tortious interference with contract are identical:

1.   The existence of a legal contract;

2.   The Defendant had knowledge of the existence of the contract;

3.   The Defendant intended to bring about or cause its breach;

4.   The Defendant acted maliciously;

5.   The contract was in fact breached;

6.   Defendant's actions were the legal cause of the breach;

7.   Plaintiff suffered damages as a result of the breach.

There are certain key differences, however, in the common law and statutory claims:

(1)   As to the common law claim of tortious interference with contract, the burden of proof necessary to establish the above-referenced elements is a preponderance of the evidence standard.  Thus, J.T. Shannon is entitled to recover for common law tortious interference with contract if J.T. Shannon establishes all of the above-referenced elements by a preponderance of the evidence.

(2)   As to the statutory claim of tortious interference with contract, the burden of proof necessary to establish the above-referenced elements is a clear and convincing standard.  Thus, J.T. Shannon is entitled to recover for statutory tortious interference with contract if the plaintiff establishes all of the above-referenced elements by clear and convincing evidence.

As I will discuss shortly, the difference may become important as to the damages available to Plaintiff if you, the jury, find that Shannon is entitled to recover for tortious interference with contract.

Summary of Inducement to Breach a Contract

If you find that J.T. Shannon has proven by clear and convincing evidence that Mr. Barrett induced Gary Xu to breach the Non-Competition provision in Gary Xu's employment contract with J.T. Shannon, you must return a verdict for J.T. Shannon and answer Verdict Form Question No. 7 "Yes".

If J.T. Shannon has failed to prove by clear and convincing evidence that Mr. Barrett induced Gary Xu to breach the Non-Competition provision in Gary Xu's employment contract with J.T. Shannon, but that J.T. Shannon has proven by a preponderance of the evidence that Mr. Barrett induced Gary Xu to breach the Non-Competition provision in Gary Xu's employment contract with J.T. Shannon, you must return a verdict for J.T. Shannon and answer Verdict Form Question No. 8 "Yes".

If J.T. Shannon has failed to prove by a preponderance of the evidence that Mr. Barrett induced Gary Xu to breach the Non-Competition provision in Gary Xu's employment contract with J.T. Shannon, you must return a verdict for Mr. Barrett and answer Verdict Form Questions No. 7 and 8 "No".

## E.  Unfair Competition

The Court will now instruct you regarding J.T. Shannon's fifth theory of relief - Unfair Competition.   J.T. Shannon asserts an unfair competition claim against Defendant Barrett.

You must decide the unfair competition issues according to the instructions that I will give to you.

A defendant is liable for unfair competition when he engages in any conduct that amounts to a recognized tort and when that tort deprives a plaintiff of customers or other prospects.

If you find Richard Barrett liable for (1) breach of fiduciary duty/duty of loyalty, or (2) tortious interference with contract, and such wrongful actions are shown to have deprived Plaintiff of its customers or prospective customers, then you must enter a verdict in favor of J.T. Shannon, and answer Verdict Form Question No. 9 "Yes."

If you find that J.T. Shannon has failed to prove by the preponderance of the evidence that Mr. Barrett breached his fiduciary duty/duty of loyalty, or tortiously interfered with a contract, you must enter a verdict against J.T. Shannon, and answer Verdict Form Question No. 9 "No."

70

If you find that Richard Barrett is liable for (1) breach of fiduciary duty/duty of loyalty, or (2) tortious interference with contract, but such wrongful actions have not deprived Plaintiff of its customers or prospective customers, you must enter a verdict against J.T. Shannon, and answer Verdict Form Question No. 9 "No."

## IV.  DAMAGES

### Consider Damages Only If Necessary

I will now instruct you on the law as it relates to damages. If a party has proven by a preponderance of the evidence (or, if applicable, clear and convincing evidence) that another party is liable on a claim, then you must determine the damages if any to which that party is entitled but only under the instructions I will give you as to how to calculate damages.  However, you should not infer that Shannon is entitled to recover damages merely because I am instructing you on the elements of damages. It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that Shannon is entitled to recovery.

First, I will discuss the law as it relates to damages under the theory of misappropriation of trade secrets.  I will then discuss the law regarding damages relating to breach of contract, followed by discussion on damages under the remaining theories.

<u>Multiple Claims</u>

At the outset, however, I instruct you that you cannot award compensatory damages more than once for the same loss, harm, or detriment.  For example, if Shannon was to prevail on two claims and establish a total injury of one dollar, you could not award plaintiff one dollar compensatory damages on each claim - it is only entitled to be made whole again, not to recover more than it lost.

<u>Prejudgment Interest</u>

Prejudgment interest is the interest that money would earn before the trial of the case had the party who is entitled to that money had the money when it would have been received but for the wrongful conduct or failure to pay that money by the opposite party.

In this case, the parties have agreed that the question of prejudgment interest, should it be applicable, should be answered by the Court after the trial.  Therefore, you are instructed not to include prejudgment interest in any award that you might make in your verdict form.

<u>No Speculative Damages</u>

You may not award remote or speculative damages. You may not, therefore, include any damages which compensate for loss or harm that, although possible, are based on conjecture, speculation, or are not reasonably certain.

To state this principle in another way, damages are prohibited as speculative when their existence is uncertain, not when merely their amount is uncertain.  Mathematical certainty is not required. Instead, the amount of damages must be shown with such reasonable degree of certainty as the situation permits.

In determining whether the proof meets the requisite degree of certainty, you may consider whether a party is responsible for creating the difficulty in ascertaining the exact amount of damages. If you make that determination, then you may, but are not required to, resolve any doubt about the amount of damages against the party responsible.

Reasonable Certainty

A party is not entitled to recover damages for a particular loss or type of harm unless the party proves that it is reasonably certain that the party has suffered such a loss or type of harm as a result of an action or inaction by the accused party. However, once a party proves that it is reasonably certain that the party has suffered a particular loss or type of harm as a result of an action or inaction by the accused party, the law does not require the party to prove the exact amount of that loss or harm.

If it is reasonably certain that the party has suffered a particular loss or type of harm as a result of a wrongful action or failure to act by the accused party, the injured party is entitled to recover damages for that loss or harm as long as there is some reasonable basis for estimating or approximating the amount of the loss or harm. A party may not be denied damages merely because the amount of the loss or harm is uncertain or difficult to determine.

## A. Damages for Trade Secret Misappropriation

<u>Trade Secret Misappropriation:
Damages - Types of Compensatory Damages</u>

If you find that Defendant is liable to J.T. Shannon for misappropriation of trade secrets, then you should consider whether J.T. Shannon has suffered monetary damages as a result of that misappropriation.

The party seeking damages has the burden to prove to you that it has suffered harm due to the wrongful conduct. Damages are designed to restore an injured party to the position it would have been in had the wrongful conduct not occurred except to the extent a defendant can show a material and prejudicial change of position prior to acquiring knowledge or reason to know of the misappropriation.

In regard to J.T. Shannon's claim for misappropriation of trade secrets, you may award damages for:

(1) actual loss to J.T. Shannon; and

(2) benefits gained by Defendant that have not been taken into account in computing (1) actual loss.

<u>Trade Secret Misappropriation:</u>
<u>Damages - Standard of Proof</u>

Because damages in trade secret cases may be difficult to compute, J.T. Shannon only has to provide a reasonable basis from which an amount of damages can be inferred or approximated.  J.T. Shannon does not have to prove the exact amount of its damages or prove these damages with mathematical certainty.

I caution you, however, that you may not award damages based on speculation.  Any award of damages must be reasonable in light of all of the evidence in the case.

<u>Trade Secret Misappropriation:</u>
<u>Damages - Determining J.T. Shannon's Lost Profits</u>

J.T. Shannon claims that it has suffered actual monetary loss from misuse of its trade secrets.  This actual loss can include both out-of-pocket expenses and lost profits.  If you find, for example, that J.T. Shannon would have realized profits from using trade secrets in its business that it has lost due to the wrongful conduct of Defendant, then you may measure damages by the amount of such lost profits for the particular periods of time that I will cover with you in a moment.

J.T. Shannon has the burden of establishing that it is entitled to damages for lost profits.  J.T. Shannon does not, however, need to negate all possibilities that someone other than J.T. Shannon would have sold the product but for the Defendant's misappropriation.

Remember, however, that any award of damages for trade secret misappropriation must be reasonable and must not be based on speculation.

<u>Trade Secret Misappropriation:</u>
<u>Damages – Ancillary Products</u>

If you find the Defendant liable for trade secret misappropriation, you must determine the amount of J.T. Shannon's lost profits, if any, attributable to the Defendant's misappropriation. J.T. Shannon is not limited to recovering lost profits only on the sale of products that incorporated or included its trade secrets. J.T. Shannon may recover profits lost from other products as a result of the misappropriation.

J.T. Shannon is entitled to damages resulting from losses on products which incorporate or include its trade secrets, but also on other products that are intimately connected with the misappropriation and ancillary thereto.

<u>Trade Secret Misappropriation:</u>
<u>Damages - Determining Defendant's Gain</u>

If you find the Defendant liable for trade secret misappropriation, you must determine the amount of the Defendant's monetary gain, if any, attributable to the Defendant's misappropriation. In measuring J.T. Shannon's damages, you may consider what benefit Defendant has gained from misuse of J.T. Shannon's trade secrets. Regardless of whether you find that J.T. Shannon itself suffered losses, if you find that Defendant benefited from using a trade secret belonging to J.T. Shannon, then you may award the monetary value that you attribute to those benefits as the measure of J.T. Shannon's damages.

J.T. Shannon has the burden of establishing the Defendant's benefits gained that were the result of any misappropriation. The Defendant has the burden of establishing any portion of the benefits gained not attributable to the misappropriation of trade secrets.

<u>Trade Secret Misappropriation:</u>
<u>Damages – Willful and Malicious Appropriation</u>

J.T. Shannon also seeks an award of exemplary damages for misappropriation under the Tennessee Uniform Trade Secret Act ("TUTSA"). Under the TUTSA, you may consider an award of exemplary damages only if you find that the plaintiff has suffered actual damage as a legal result of the defendant's fault and you have made an award for compensatory damages.

If you should find from the preponderance of the evidence that J.T. Shannon is entitled to a verdict for actual or compensatory damages for misappropriation of trade secrets, you may consider whether Defendant acted willfully and maliciously and record your answer on Question No. 17 of the Verdict Form.

Under the applicable law concerning damages under Tennessee Code Annotated § 47-25-1704, an act is willfully done if done voluntarily and intentionally and with the specific intent to commit such an act. An act is maliciously done if prompted or accompanied by ill will or such gross indifference to the rights of others as to amount to a willful act done intentionally without just cause or excuse.

Exemplary damages may be considered if, and only if, the

82

Plaintiff has shown by clear and convincing evidence that the Defendant has acted both willfully and maliciously.  Unlike other exemplary damages, exemplary damages under the Tennessee Uniform Trade Secret Act are determined by the Court and are limited under the statute.

As mentioned previously, clear and convincing evidence is a different and higher standard than preponderance of the evidence. It means that the defendant's wrong, if any, must be so clearly shown that there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.

If you determine under this claim (the trade secret misappropriation claim) that the Plaintiff has proven by clear and convincing evidence that the Defendant willfully and maliciously misappropriated trade secret(s), then it will be up to the Court to determine the amount, if any, of exemplary damages as to the Defendant.

## B.  Damages for Breach of Contract

When a contract is breached, the complaining party is entitled to be placed in as good a position as would have been occupied had the contract been fulfilled in accordance with its terms. The complaining party is not entitled to be put in a better position by a recovery of damage for breach of contract than would have been realized had there been full performance. The damages to be awarded are those that may fairly and reasonably be considered as arising out of the breach or those that may reasonably have been in the contemplation of the parties when the contract was made. Damages that are remote or speculative may not be awarded.

## C. Nominal Damages

If you find that Mr. Barrett breached his Employment Contract with J.T. Shannon then nominal damages are presumed. The purpose of nominal damages is to recognize a legal right. Where there is a breach of contract, but even when no actual damages have been proven, Shannon is entitled to nominal damages.

D.  Damages for Breach of Fiduciary Duty/Duty of Loyalty

If you find the Plaintiff has proven by a preponderance of the evidence Defendant Richard Barrett breached the fiduciary duty/duty of loyalty he owed to Plaintiff, you may award the Plaintiff such damages as you deem necessary to reasonably compensate the Plaintiff, including the following:

(1)  Any profit or benefit Defendant received as a result of his breach; or

(2)  Any compensation the Plaintiff paid to Defendant during the period of the breach.

86

## E. Damages for Tortious Interference with Contract

If you find by a preponderance of the evidence that J.T. Shannon is entitled to recover damages for tortious interference with contract, you may award J.T. Shannon an amount that will compensate it for all damages resulting from the interference. The award of damages may include compensation for:

(1)   The pecuniary loss of the benefits of the contract.

(2)   Any consequential losses legally caused by the interference.   A consequential loss is any direct out-of-pocket expense incurred by J.T. Shannon as a direct and legal result of the interference or breach of contract.

In addition, treble damages are automatically awarded to a plaintiff if, and only if, the plaintiff has shown by clear and convincing evidence that the Defendant tortiously interfered with contract.  As mentioned previously, clear and convincing evidence is a different and higher standard than preponderance of the evidence.  It means that the defendant's wrong, if any, must be so clearly shown that there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.

If you determine that the Plaintiff has proven by clear and

convincing evidence that the Defendant tortiously interfered with Gary Xu's contract with J.T. Shannon, then it will be up to the Court to calculate the amount of treble damages to be awarded to Plaintiff.

## F.  Damages for Unfair Competition

I have already instructed you regarding the substantive law regarding Plaintiff's unfair competition claim.  If you determine that Plaintiff has proven by a preponderance of the evidence that (1) Mr. Barrett breached his fiduciary duty/duty of loyalty owed to Plaintiff, or (2) Mr. Barrett tortiously interfered with Gary Xu's contract with J.T. Shannon, and as a result Plaintiff was deprived of its customers or prospective customers, you may award damages for loss of business and goodwill, loss of profits, loss of customers, and recoupment of profits from the offending party.

Remember, J.T. Shannon has the burden of establishing the amount of any actual damages, if any, that were caused by that defendant's wrongful conduct.  As you know, damages must be determined with reasonable certainty.  Mathematical precision need not be shown, but you are not to guess or speculate as to damages.

You may award an amount that would fairly compensate J.T. Shannon for damages proximately caused by the defendant.

This, of course, is all for you the jury to determine.

G.  Punitive Damages for Common Law Causes of Action

J.T. Shannon has asked that you make an award of punitive damages under the theories of breach of contract, breach of common law fiduciary duty/duty of loyalty, common law tortious interference with contract, and unfair competition.  This award may be made only under the following circumstances.

You may consider an award of punitive damages only if you find that J.T. Shannon has suffered actual damage as a legal result of the Defendant's fault and you have made an award for compensatory damages.  The purpose of punitive damages is not to further compensate J.T. Shannon but to punish a wrongdoer and deter others from committing similar wrongs in the future.  Punitive damages may be considered if, and only if, J.T. Shannon has shown by clear and convincing evidence that a Defendant has acted either intentionally, recklessly, maliciously, or fraudulently.

As we discussed earlier, clear and convincing evidence is a different and higher standard than preponderance of the evidence.  It means that the defendant's wrong, if any, must be so clearly shown that there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.

A person acts intentionally when it is the person's purpose

90

or desire to do a wrongful act or to cause the result.

A person acts recklessly when the person is aware of, but consciously disregards a substantial and unjustifiable risk of injury or damage to another.  Disregarding the risk must be a gross deviation from the standard of care that an ordinary person would use under all the circumstances.

A person acts maliciously when the person is motivated by ill will, hatred or personal spite.

A person acts fraudulently when: (1) the person intentionally either misrepresents an existing material fact or causes a false impression of an existing material fact to mislead or to obtain an unfair or undue advantage; and (2) another person suffers injury or loss because of reasonable reliance upon that representation.

If you decide to award punitive damages, you will not assess an amount of punitive damages at this time. You will, however, report your finding to the court.

<u>State of Mind</u>

Finally, I want to explain something about proving a defendant's state of mind.

Ordinarily, there is no way that either a corporation or an individual defendant's state of mind can be proved directly, because no one can read another person's mind and tell what that person or corporation is thinking.  Remember that a corporation acts not only through the policies and decisions that it makes, but also through its designated supervisory employees and others designated by the corporation to act on its behalf.  Therefore in determining the state of mind of a corporation you may consider the state of mind of those individuals designated to act on its behalf, as well as the policies and decisions of the corporation.

Moreover, an individual defendant's state of mind can be proved indirectly from the surrounding circumstances.  This includes things like what the defendant said, what the defendant did, how the Mr. Barrett acted, and any other facts or circumstances in evidence that show what was in the defendant's mind.

You may also consider the natural and probable results of any acts that the defendant knowingly did or did not do, and whether it is reasonable to conclude that Mr. Barrett intended

those results.   This, of course, is all for you to decide.

## IV.   VERDICT FORM

Finally, ladies and gentlemen of the jury, we come to the point where we will discuss the form of your verdict and the process of your deliberations.  You will be taking with you to the jury room a verdict form which reflects your findings.  The verdict form reads as follows:

[Read Verdict Form]

You will be selecting a presiding juror after you retire to the jury room.  That person will preside over your deliberations and be your spokesperson here in court.  When you have completed your deliberations, your presiding juror will fill in and sign the verdict form.

Your verdict must represent the considered judgment of each of you.  In order to return a verdict, it is necessary that each of you agree to that verdict.  That is, each of your verdicts must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgments.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your

94

own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

We will be sending with you to the jury room all of the exhibits in the case.  You may not have seen all of these previously and they will be there for your review and consideration.  You may take a break before you begin deliberating but do not begin to deliberate and do not discuss the case at any time unless all ten of you are present together in the jury room.  Some of you have taken notes.  I remind you that these are for your own individual use only and are to be used by you only to refresh your recollection about the case. They are not to be shown to others or otherwise used as a basis for your discussion about the case.

## V.   JURY COMMUNICATIONS

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the Court Security Officer who will bring it to my attention.  I will then respond as promptly as possible after conferring with counsel, either in writing or by having you returned to the courtroom so that I can address you orally.  Please understand that I may only answer questions about the law and I cannot answer questions about the evidence.  I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.